# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ENCYCLOPAEDIA BRITANNICA, INC.,    )
    )
    Plaintiff,    )
    )
v.    )  No. 08CV2752    TG
    )
MARKUS SLEUWEN GUERRERO and    )
ONLINE EDUCATION SYSTEMS, LLC,    )
    )
    Defendants.    )

**FILED: MAY 12, 2008**

**JUDGE CASTILLO**

**MAGISTRATE JUDGE ASHMAN**

## COMPLAINT

1.     This is an action to obtain immediate injunctive relief, permanent injunctive relief, declaratory relief, monetary damages and attorneys' fees and costs arising from Defendants' unauthorized use of Plaintiff's marks, copyrighted content and proprietary rights in willful disregard of Plaintiff's rights following termination of a license, as well as to recover for breach of that license and conversion.

## THE PARTIES

2.     Plaintiff, Encyclopaedia Britannica, Inc. ("EB"), is a Delaware corporation, with its principal place of business in Chicago, Illinois.

3.     Defendant, Markus Sleuwen Guerrero ("Sleuwen"), is President of Defendant, Online Education Systems, LLC ("OES"), and resides in Illinois in this District.

4.     Defendant, OES, is a Delaware corporation, with its principal place of business in Chicago, Illinois.

5.     Sleuwen has directed and controlled the activities of OES complained of in this action.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction by virtue of the fact that this is a civil action arising under the Lanham Act (15 U.S.C. § 1051 *et seq.*) and the Copyright Act (17 U.S.C. § 101 *et seq.*), jurisdiction being conferred by 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a). This Court has supplemental jurisdiction over all related state and common law claims in accordance with 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367.

7.    Defendant OES has consented to jurisdiction and venue in this Court.

## FACTUAL ALLEGATIONS RELEVANT TO ALL CLAIMS

### EB and its Intellectual Property

8.    EB is the nation's leading provider of encyclopedic and other reference works and content in print and electronic form. EB enjoys an unmatched reputation for reliable and authoritative publications.

9.    EB markets its content and works in many languages, including Spanish. EB's content and works are provided via various websites on a subscription basis to consumers and a variety of institutions, including schools and libraries.

10.    Since long prior to any date on which OES commenced engaging in the complained of wrongful conduct, EB has continuously used in commerce the marks BRITANNICA, EB, and a distinctive trade dress to identify information services and encyclopedic content.

11.    EB owns federal registrations for its BRITANNICA and EB marks, including the following:

| Mark | Registration No. | Goods/Services |
|---|---|---|
| BRITANNICA BOOK OF THE YEAR | 825,337 | Reference volumes published annually devoted to current events |
| BRITANNICA | 1,309,991 | Reference works in particular, junior encyclopedias and atlases |
| BRITANNICA | 1,506,869 | Educational materials for adults and children, namely encyclopedias dictionaries, atlases, reference books, booklets, charts, posters, manuals and pamphlets; Cinematographic motion picture films, slides, filmstrips, audio and video cassettes and computer programs; retail outlet distributorship, mail order services in the fields of education management and business |
| BRITANNICA ONLINE | 1,918,562 | Computer services, namely providing access to computer databases of information in the field of encyclopedias, yearbooks, and dictionaries |
| BRITANNICA | 2,287,468 | Computer services, namely providing access to computer database of information dealing with educational reference materials for adults and children in the field of encyclopedias, yearbooks, dictionaries and other reference materials |
| BRITANNICA.COM | 2,550,643 | Promotion of goods and services of others by placing advertisements and promotional displays in an electronic online website accessed through global computer network; providing electronic mail; providing search engines for obtaining data on a global compute network including organizing, creating indices and displaying directories of information, websites and other resources |
| EB | 2,217,453 | Computer services, namely providing access to computer databases of information in the filed of encyclopedias, yearbooks and dictionaries |

12.    These registrations constitute *prima facie* evidence of the validity of the registered mark, of EB's ownership of the mark, and of EB's exclusive right to use the mark on or in connection with the goods or services specified in the registration. 15 U.S.C. §1115.

3

Registration Nos. 825,337; 1,309,991; 1,506,869; 2,287,468; 2,217,453 and 2,550,643 are incontestable pursuant to 15 U.S.C. §§ 1064 and 1115(b).

13.    EB has expended substantial resources to advertise and promote its BRITANNICA and EB marks and related trade dress, including the famous Thistle design, and has offered many millions of dollars worth of services and sold hundreds of millions of dollars worth of products under and in connection with its BRITANNICA and EB marks, and related trade dress.

14.    By virtue of EB's long use, widespread advertising and enormous sales, the BRITANNICA and EB marks and related trade dress have become well-known as symbols of EB's products and services, and the products and services of those authorized by EB to use its BRITANNICA and EB marks and trade dress, and therefore has come to represent goodwill of great value which is owned by EB.

15.    EB's encyclopedic and other reference works are original to EB and constitute copyrightable subject matter.

16.    EB has complied in all respects with the provisions of the Copyright Laws of the United States, 17 U.S.C. § 101 *et seq.*, has secured the exclusive rights and privileges in its encyclopedic and other reference works, and has received Certificates of Registration from the Register of Copyright for its encyclopedic and other reference works, including the following registrations:

|   | **Title** | **Registration No.** |
|---|---|---|
| 1. | New Encyclopaedia Britannica | TX0004463702 |
| 2. | New Encyclopaedia Britannica | TX0003053801 |
| 3. | New Encyclopaedia Britannica | TX0002787808 |

| | Title | Registration No. |
|---|---|---|
| 4. | New Encyclopaedia Britannica | TX0002577200 |
| 5. | New Encyclopaedia Britannica | TX0002278849 |
| 6. | New Encyclopaedia Britannica | TX0002002032 |
| 7. | New Encyclopaedia Britannica | TX0002002031 |
| 8. | New Encyclopaedia Britannica | TX0001540751 |
| 9. | Enciclopedia Compacta Britannica | TX6542056 |
| 10. | Britannica & 10 other titles; audiovisual works | V1853P257 |
| 11. | Britannica atlas | TX0003826336 |

17.     EB is the sole proprietor of all rights, title and interest in its encyclopedic and other reference works.

### Defendants' Licensing and Distribution Agreement with EB.

18.     In 2005, Defendants approached EB to obtain a license to offer online services (the "Services") utilizing EB's BRITANNICA mark and certain copyrighted Spanish language reference works of EB in combination with Spanish language reference works which Defendants were negotiating to obtain a license to use from Editorial Salvat S. L. ("Salvat").

19.     On July 7, 2005, OES entered into a license agreement with Salvat (the "Salvat Agreement"). Because that agreement is confidential, it will be filed under seal pursuant to motion in connection with EB's motion for injunctive relief. In the Salvat Agreement, OES acquired a restricted right to use Salvat's content in connection with the Services marketed under the name of Salvat and Encyclopaedia Britannica.

20.    The Salvat Agreement contemplated the consummation of the EB/OES

Agreement (the "EB/OES Agreement" or "Agreement") which was concluded effective as of

October 4, 2005 after much negotiation.

21.    In turn, the EB/OES Agreement provides that OES would launch the Services in

2006 on the foundation of the substantial text and multimedia database of the *Gran Enciclopedia

Salvat*, along with Salvat's ongoing editorial involvement and delivery of updated content.  The

EB/OES Agreement limited OES' right to use EB's copyrighted content and intellectual property

only as part of online services bundled with Salvat content.  OES is obligated to pay EB royalties

and marketing fees as part of the Agreement.  The EB/OES Agreement is confidential and will

be filed under seal pursuant to motion in connection with EB's motion for injunctive relief.

22.    In connection with the EB/OES Agreement, EB collaborated with OES in

developing a Website at http://www.ebrisa.com, that contains intellectual property of EB.  The

URL is a combination of EB's EB trademark and SA for Salvat.

23.    The Website at http://www.ebrisa.com uses EB's prominently display's EB'S

BRITANNICA mark and distinctive trade dress, including the Thistle design, on its homepage.

A copy of the www.ebrisa.com homepage is attached as Exhibit 1.

### Defendants' Breach of the EB/OES Agreement

24.    Pursuant to the EB/OES Agreement, Defendants launched the Services at

http://www.ebrisa.com utilizing EB's BRITANNICA mark and certain Spanish language

reference works of EB in mid-2006, but failed to deliver the *Gran Enciclopedia Salvat* and the

updated content as required by the EB/OES Agreement.

25.    The delivery of the *Gran Enciclopedia Salvat* and Salvat's ongoing editorial

involvement in maintaining the quality of the Services, pursuant to the EB/OES Agreement, was

the essence of the Agreement. Indeed, the EB/OES Agreement provides that EB may terminate the Agreement, at any time following termination of the Salvat Agreement.

26.     Despite EB's repeated demands that OES comply with its obligations under the EB/OES Agreement, OES has failed to deliver the required content in clear breach of the Agreement. Moreover, this failure meant that the Services were not being maintained in accordance with the Britannica Standards referred to in the EB/OES Agreement.

27.     Indeed, by Sleuwen's own admissions, OES' failure to provide this updated content has caused much damage to EB.

28.     On November 28, 2007, EB sent Defendants written notice, pursuant to the EB/OES Agreement, that OES is in material breach of the EB/OES Agreement due to its failure to maintain the Services in accordance with the Britannica Standards and specifically, its failure to provide the updated content. Attached as Exhibit 2 is a copy of the letter dated November 28, 2007, sent by EB to Defendants. Exhibit 2 constitutes notice of breach under the terms of the EB/OES Agreement. Pursuant to the EB/OES Agreement, EB provided OES a 30-day grace period to cure this deficiency.

29.     Defendants did not contest or dispute that the delivery of the updated content was owed, rather they repeatedly represented that the content was forthcoming.

30.     Reasonably relying on these representations and promises, EB delayed in filing a lawsuit and agreed to a mutual moratorium, suspending any actions until March 31, 2008 and providing, among other things, that OES would comply with its editorial duties by March 31, 2008. Attached as Exhibit 3 is a copy of the mutual moratorium agreement dated December 26, 2007.

31.    Thereafter, EB learned, by Sleuwen's own admission, that OES' failure to deliver the *Gran Enciclopedia Salvat* and updated content was due to Salvat's termination of the Salvat Agreement.

32.    Accordingly, EB requested permission from OES to negotiate with Salvat directly regarding the availability and currency of the *Gran Enciclopedia Salvat*, but Defendants' imposed unreasonable and oppressive conditions on separate talks between EB and Salvat. Attached as Exhibit 4 is a copy of the letter dated March 11, 2008, sent by Defendants to EB regarding its request to engage in separate talks with Salvat.

33.    The moratorium ended without OES having complied with its obligations thereunder and OES remaining in breach of the EB/OES Agreement.  Moreover, it became clear to EB that because of the termination of the Salvat Agreement, OES would be unable to provide EB with the *Gran Enciclopedia Salvat*, the essence of the EB/OES Agreement as originally contemplated.  Thus, the EB/OES Agreement was effectively rendered null and void.

34.    In light of OES' inability and failure to provide EB with the *Gran Enciclopedia Salvat* and updated content, EB sent Defendants notice on March 27, 2008, that it was terminating the EB/OES Agreement effective March 31, 2008.  Attached as Exhibit 5 is a copy of the letter dated March 25, 2008, sent by EB to Defendants.  Exhibit 5 constitutes notice of termination under the terms of the EB/OES Agreement.

35.    Pursuant to EB/OES Agreement, OES had certain obligations upon termination including removing the licensed intellectual property from the Services, purging any and all portions of the licensed intellectual property from system services and hard disk drives in its possession or under its control, and returning or destroying all of EB's confidential and proprietary information and materials ("Confidential Information").  The EB/OES Agreement

further provides EB with a purchase option upon termination, which grants EB the option to purchase the tangible and intangible assets owned by OES that are used in connection with the Services.

36.    In EB's termination letter of March 25, 2008 (*see* Exhibit 5), EB notified OES that it was exercising its purchase option and requested that OES comply with its termination obligations and provide OES' financial information in connection with the purchase option. EB also informed OES that it will need to confer with Salvat in order to determine the value of the assets of OES that EB will be purchasing.

37.    Rather than comply with its termination obligations under the EB/OES Agreement, OES, through its attorneys', threatened EB with a lawsuit alleging breach of contract, tortious interference with contractual relations, and tortious interference with prospective economic advantage. A copy of the letter dated April 9, 2008, from OES' attorneys is attached as Exhibit 6.

38.    On May 1, 2008, notwithstanding termination of the EB/OES Agreement and EB's ownership of the EB mark, OES filed an application with the United States Patent and Trademark Office for the registration of the EBRISA mark (Serial. No. 77462642) for use in connection with "providing an online publication in the nature of an interactive encyclopedia in the field of Spanish language; providing online non-downloadable electronic dictionaries."

## COUNT I – TRADEMARK COUNTERFEITING AND INFRINGEMENT

### Defendants and Their Unauthorized Use of EB's Intellectual Property

39.    Plaintiff realleges the allegations of paragraphs 1 to 38.

40.    Under the EB/OES Agreement, Defendants were authorized by EB to utilize EB's intellectual property in connection with the Services.

41.    Upon termination of the EB/OES Agreement, Defendants no longer were authorized to use EB's BRITANNICA and EB trademarks and related trade dress.

42.    Despite the termination of the EB/OES Agreement, Defendants continue to offer services in competition with EB at http://www.ebrisa.com utilizing EB's BRITANNICA trademark and related trade dress, various confidential and proprietary information of EB, and copyrighted works of EB.

43.    OES has acknowledged the validity and EB's ownership of the BRITANNICA mark, and the right of EB to the intellectual property provided by EB in connection with collaboration under the EB/OES Agreement.

44.    Defendants have continued to use the BRITANNICA and EB marks, related trade dress and other intellectual property of EB with full knowledge of, and in willful disregard of EB's rights, and with the intent to obtain a commercial advantage that Defendants otherwise would not have.

45.    Defendants' acts are likely to cause confusion, mistake or deception with EB's registered marks.

46.    Defendants' acts constitute trademark counterfeiting in violation of the Trademark Law of the United States, 15 U.S.C. § 1114.

47.    Defendants' acts constitute willful trademark infringement in violation of 15 U.S.C. § 1114.

48.    OES has acknowledged in the EB/OES Agreement that there is no adequate remedy at law for breach of the Agreement and that such conduct would result in irreparable harm.  As such, OES has agreed that EB is entitled to specific performance and injunctive relief without the posting of a bond or other security in the event of a breach.

49.    EB will continue to suffer irreparable injury if Defendants are not enjoined or specific performance is not ordered.

## COUNT II - UNFAIR COMPETITION

50.    Plaintiff realleges the allegations of paragraphs 1 to 38.

51.    Defendants' willful acts are likely to cause confusion or mistake, or to deceive as to Defendants' affiliation, connection, or association with EB, or as to the origin, sponsorship, or approval of Defendants' services.

52.    Defendants are engaged in unfair competition with EB, including passing off, in violation of 15 U.S.C. § 1125(a), which if not enjoined will continue to cause irreparable injury to Plaintiff.

53.    Defendants' acts constitute unjust enrichment and unfair competition under the common law of the various states, including the State of Illinois.

## COUNT III - VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT AND ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

54.    Plaintiff realleges the allegations of paragraphs 1 to 38.

55.    Defendants' conduct constitutes deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 IL. Comp. Stat. Ann., 510/1 *et seq*., the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 IL. Comp. Stat. Ann. 505/12 *et seq*. and the common law of the State of Illinois, which if not enjoined will continue to cause irreparable injury to EB.

## COUNT IV – FEDERAL CYBERSQUATTING

56.    EB realleges the allegations of paragraphs 1 to 38.

57.    Under the EB/OES Agreement, Defendants were authorized by EB to use the domain name ebrisa.com.

58.    Upon termination of the EB/OES Agreement, Defendants no longer were authorized to use the domain name ebrisa.com.

59.    Despite the termination of the EB/OES, Defendants, with a bad faith intent to profit from EB's famous EB mark, continue to use the domain name ebrisa.com.

60.    Defendants' aforesaid acts constitute cybersquatting in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

## COUNT V – COPYRIGHT INFRINGMENT

61.    Plaintiff realleges the allegations of paragraphs 1 to 38.

62.    Under the EB/OES Agreement, Defendants were authorized by EB to utilize EB's copyrighted works in connection with the Services.

63.    Upon termination of the EB/OES Agreement, Defendants no longer were authorized to use EB's copyrighted works in connection with the Services.

64.    Defendants continue to reproduce, distribute, and prepare derivative works based upon  EB's copyrighted encyclopedic and other reference works.

65.    Defendants have acknowledged the validity and EB's ownership of the copyrighted encyclopedic and other reference works, and the right of EB to the intellectual property provided by EB in connection with collaboration under the EB/OES Agreement.

66.    Defendant's acts constitute willful copyright infringement of EB's copyrighted encyclopedic and other reference works under 17 U.S.C. § 501.

67.    Defendants acts are without EB's authorization or consent.

## COUNT VI – BREACH OF CONTRACT

68.     Plaintiff realleges the allegations of paragraphs 1 to 38.

69.     EB has performed all of its obligations and conditions precedent under the EB/OES Agreement.

70.     EB had notified OES that it materially failed to perform its obligations under the EB/OES Agreement and provided OES ample opportunity to cure its breaches.

71.     OES has breached, and continues to breach, the EB/OES Agreement, which breach has caused irreparable harm to EB.  Among other breaches, OES has failed to pay royalties and marketing fees of at least $24,500.

72.     Pursuant to the EB/OES Agreement, within thirty days after the close of each Calendar Quarter, OES is obligated to provide EB with an accounting of its gross revenues, but OES has not complied with this obligation.  Accordingly, EB does not have access to the records and information necessary to ascertain the precise amount of monies that were paid to or received by Defendants, and as such, the precise amount of additional unpaid royalties and marketing fees.

73.     Upon termination of the EB/OES Agreement, EB is entitled to exercise a purchase option and to require EOS to cease all use of and return to EB all intellectual property of EB.  OES has not complied with its obligations upon termination.

74.     Without specific performance of the termination provisions of the EB/OES Agreement, EB will continue to suffer irreparable harm, as acknowledged by OES.

## COUNT VII - CONVERSION

75.     Plaintiff realleges the allegations of paragraphs 1 to 38.

76.    Pursuant to the EB/OES Agreement, upon termination of the Agreement Defendants are required to return or destroy EB's Confidential Information.

77.    Defendants have not returned or destroyed the Confidential Information.

78.    EB has demanded that Defendants return the Confidential Information to EB, but Defendants have refused to comply with EB's request.

79.    Defendants' refusal to return the Confidential Information to EB constitutes conversion.

## COUNT VIII – DECLARATORY RELIEF

80.    Plaintiff realleges the allegations of paragraphs 1 to 38.

81.    By reason of the foregoing, a real and justiciable controversy exists between the parties and Plaintiff is entitled to a declaration, pursuant to 28 U.S.C. § 2201, that:

a.    EB validly terminated the EB/OES Agreement due to OES' material breaches, including OES' failure to deliver the *Gran Enciclopedia Salvat* and updated content;

b.    EB validly terminated the EB/OES Agreement due to the termination of the Salvat Agreement;

c.    EB is entitled to participate in separate talks with Salvat in order to understand Salvat's position regarding its termination of the Salvat Agreement, and whether, through EB's exercise of the Purchase Option, EB can acquire rights to the Gran Enciclopedia Salvat;

d.    EB's communications with Salvat do not constitute a breach of contract, tortious interference with contractual relations, tortious interference with prospective economic advantage with Defendants, or give rise to any claims, remedies or causes of action by Defendants.

14

**WHEREFORE**, Plaintiff prays for judgment as follows:

1.    Except as authorized by EB in the EB/OES Agreement, Defendants, their officers, agents, servants, employees, attorneys and all others in active concert or participation with either of them, be enjoined during the pendency of this action and permanently thereafter from:

  a.    Using the name and mark BRITANNICA, the EB mark, or related trade dress or other intellectual property of EB, including but not limited to, the Thistle Design;

  b.    Using any other name or mark that is identical to, substantially indistinguishable from, or a colorable imitation or simulation of EB's BRITANNICA and EB marks or related trade dress, including the EBRISA mark;

  c.    registering or using, directly or indirectly, ebrisa.com, or any other domain name that contains the BRITANNICA or EB marks, or any colorable imitation, simulation or typographical variation of it, either alone or in combination with any other term, or any domain name that is confusingly similar to any of the above; and

  d.    Reproducing, distributing, or preparing derivative works based upon EB's copyrighted encyclopedic and other reference works;

  e.    Doing any other act or thing likely to induce the belief that Defendants' business or services are in any way legitimately connected with or sponsored or approved by EB.

2.    That Defendants be required to:

  a.    Pay to EB all profits derived by Defendants from their complained of acts and three times the amount of EB's damages, in an amount to be determined, incurred by reason of Defendants' acts;

  b.    At EB's election, pay to EB statutory damages of $1,000,000 for Defendants' willful acts of counterfeiting;

  c.    At EB's election, pay to EB statutory damages of $150,000 for each separate willful act of copyright infringement;

  d.    At EB's election, pay to EB statutory damages of $150,000 for each act of cybersquatting;

e.    Pay to EB the costs of this action and EB's reasonable attorneys' fees and disbursements;

f.    Pay to EB at least $24,500 plus interest for known unpaid royalties and marketing fees;

g.    Provide a full accounting so that EB can determine the precise amount of additional unpaid royalties and marketing fees;

h.    Pay to EB all unpaid royalties and marketing fees, plus interest;

i.    Take all steps necessary to immediately effectuate the transfer to EB of the domain names ebrisa.com, as well as any other domain name covered by Paragraph 1.c;

j.    Take all steps necessary to effectuate EB's purchase option;

k.    Return the Confidential Information to EB;

l.    Deliver up for destruction all material of a counterfeit, infringing, or unfair nature in Defendants' possession or control; and

m.    File with this Court and serve on EB an affidavit setting forth in detail the manner and form of Defendants' compliance with the terms of this Court's injunction.

3.    This Court declare that:

a.    EB validly terminated the EB/OES Agreement due to OES' material breaches, including, OES' failure to deliver the *Gran Enciclopedia Salvat* and updated content;

b.    EB validly terminated the EB/OES Agreement due to the termination of the Salvat Agreement;

c.    EB is entitled to participate in separate talks with Salvat in order to understand Salvat's position regarding its termination of the Salvat Agreement, and whether, through EB's exercise of the Purchase Option, EB can acquire rights to the *Gran Enciclopedia Salvat*; and

d.    EB's communications with Salvat do not constitute a breach of contract, tortious interference with contractual relations, tortious interference with prospective economic advantage with Defendants, or give rise to any claims, remedies or causes of action by Defendants.

4.     Plaintiff be awarded such other and further relief as is just and equitable.

Date:  May 12, 2008                LOEB & LOEB LLP

                              By:     /s/ Douglas N. Masters
                                      Douglas N. Masters
                                      321 North Clark Street, Suite 2300
                                      Chicago, Illinois 60610
                                      Telephone:  (312) 464-3100
                                      Fax:  (312) 464-3111

                                      Attorneys for *Encyclopaedia Britannica, Inc.*

NY718182.2

17

# EXHIBIT 1



# Britannica-Salvat Online
LA ENCICLOPEDIA MULTIMEDIA DEL SIGLO XXI
EN EL PORTAL TERRA

Active su
CUENTA PERSONAL

Busqueda Diccionario

> Búsqueda:

¡Olvido su contraseña?

Active hoy su

Suscribirse a
Britannica-Salvat

Atlas Mundial
Prensa al día
Más artículos
Más definiciones
Más vídeos

Obtenga    como suscriptor

▪ Gratis

Para Suscriptores

Descubra más
con nuestra

BUSQUEDA A Z

BUSQUEDA MULTIMEDIA

ATLAS MUNDIAL

BIOGRAFIAS

TEMAS GUIADOS

## Búsquedas Recomendadas

Lluvia, vapor y
velocidad

Óleo sobre tela
realizado por el pintor
inglés Joseph Mallord
William Turner en 1844;
se halla en la National
Gallery de Londres.

> Ver artículo

## Revista de prensa

El país   España

> El número uno de España
contra la Razón por beber y no
desmayarse

> De la Vega   Si Ibarretxe
vuelve a sacar el plan del cajón
Zapatero lo retirará y

El Mercurio   Chile

## Actualidad

Destacados

España. El escritor Pablo García Baena   obtenido
la 17ª edición del Premio Reina Sofía de Poesía
Iberoamericana. Dotado con 42.100 euros, este
galardón es el más importante conseguido a toda
una carrera literaria. El poeta Cordobés, de 84
años, ya había obtenido  en 1984, el premio
Príncipe de Asturias de Literatura.

Hoy en la historia

La nación

El universal

El nuevo día   Puerto Rico

RSS no encontrado

**1994:** Nelson Mandela, presidente de Sudáfrica. Líder de la lucha contra la segregación racial en Sudáfrica, Mandela, encarcelado durante 28 años, se convierte en el primer presidente negro de su país.

Biografía del día
José Ortega y Gasset

Bajar Películas




# EXHIBIT 2



ENCYCLOPÆDIA
# Britannica

November 28, 2007

VIA FEDERAL EXPRESS AND E-MAIL

Online Education Systems, LLC
1511 Franklin Avenue
River Forest, IL  60305

Attention:  Mr. Markus Sleuwen Guerrero, President

Re:     Notice of Breach under Section 6.1 of the License and Distribution Agreement between
        Online Education Systems, LLC ("OES") and Encyclopaedia Britannica, Inc. ("EB"),
        dated October 4, 2005 ("the Agreement")

Dear Sir:

This letter constitutes a notice pursuant to Sections 6.1 and 12.6 that OES is in material breach of
the Agreement.  Among other things, the failure to update the Salvat Content of the Services
referred to in the Agreement is a serious matter for EB and the continuing failure of OES to
rectify this problem means the Services are not being maintained in accordance with the
Britannica Standards referred to in Section 4.1 of the Agreement.

EB sincerely hopes that OES will cure this deficiency within the 30 day grace period provided
for in the Agreement.  During this period, EB's President and Sr. Vice-President/International
are available to discuss OES's progress in this regard and ways to resolve the difficulties which
have developed between OES and EB under the Agreement.

Very truly yours,

William J. Bowe
Executive Vice-President
And General Counsel

WJB:rk

cc:   Jorge Cauz
      Leah Mansoor
      Douglas N. Masters, Esq.

# EXHIBIT 3

ENCYCLOPÆDIA

# Britannica

December 26, 2007

Mr. Markus Sleuwen Guerrero
President
Online Education Systems, LLC
1511 Franklin Avenue
River Forest, IL 60305

Dear Markus,

I am responding to your email of December 19, 2007, to Leah Mansoor which you copied to me and Jorge Cauz. Hereafter, please address correspondence of a legal nature directly to me, copying whomever you choose.

It is impossible to tell from your description exactly what and how much Salvat content was updated. The only specifics you mention are 176 country articles and 100 biographies. You insist that "OES has updated a substantial amount of other articles" but you provide no list or quantitative evidence of the percentage of the increase in data. Nor do you provide a list of articles updated as a result of the 2006 Salvat delivery. This is not the "clarity" you promised.

Notwithstanding the foregoing, EB is willing to agree with OES to a mutual moratorium, suspending any actions, executory or otherwise, based on alleged defaults by either EB or OES, until March 31, 2008, if OES agrees to:

1. Prior to January 31, 2008, pay, or have American Express pay, EB the $15,485.75 it is owed, subject to the proviso set forth in Section 3.d. of OES' correspondence of 12-19-07 referenced above.
2. Accomplish the following:
   * Organize a meeting to be held among Salvat, OES and EB before January 31, 2008
   * Compliant editorial duties of OES by March 31, 2008.

3. Propose and negotiate in good faith an alternative to the provisions in the License and Distribution Agreement regarding EB's technical and marketing consultancy and its Marketing Fees and, failing agreement by January 31, 2008, honor those provisions as originally agreed.

ENCYCLOPÆDIA

# Britannica

Mr. Markus Sleuwen Guerrero
December 26. 2007
Page 2

If the foregoing is acceptable to OES, please sign the enclosed copy below to indicate your agreement and return it to me.

Sincerely yours,

William J. Bowe
Executive Vice President and General Counsel

P.S. With respect to the "additional third party up-to-date Spanish language content containing a large amount of multimedia resources" for which you are currently negotiating, please bear in mind that any agreement must be freely assignable to EB. unless EB consents otherwise.

cc: J. Cauz
    L. Mansoor
    D. Masters

Accepted and agreed:

Online Education Systems. LLC

By: _____

    Markus Sleuwen Guerrero
    President

www.britannica.com

# EXHIBIT 4

**Britannica Salvat**

Markus Sleuwen Guerrero
**President**

Direct Line: 312-239-0214
Email: msleuwen@ebrisa.com

March 11, 2008

Leah Mansoor
Vice-President
Enciclopaedia Britannica, Inc.

Re:  <u>Interactions with Editorial Salvat, S.L.</u>

Dear Leah:

This letter agreement (the "Letter Agreement") is sent to you to set forth the terms pursuant to which Online Education Systems, LLC ("OES") is willing to grant its permission to Encyclopaedia Britannica, Inc. ("EB") (OES and EB jointly, the "Parties" and individually, a "Party"), effective as of March 11, 2008 (the "Effective Date"), to engage in discussions with Editorial Salvat, S.L. ("Salvat") to assist OES in the resolution of its current dispute with Salvat.

OES grants EB permission to engage in discussions with Salvat to assist OES in the resolution of OES' current dispute with Salvat, subject to the terms, limitations and conditions set forth below:

1.      The grant is limited in duration from March 12, 2008 through April 12, 2008, which OES may extend, in its sole discretion, by means of a writing expressly to that effect, upon receipt of EB's written request therefor.  The moratorium previously agreed to between OES and EB hereby is extended through April 12, 2008 (and the expiration date of any extension thereof requested by EB and granted by OES).

2.      This Agreement shall remain in full force and effect for a period of three years from the Effective Date (the "Term"); provided that Sections 5, 8, 9 and 15 shall survive the termination of this Agreement.

3.      In the event that EB or any company in which EB, directly or indirectly, owns or has owned an equity interest, and all of their respective officers, directors, managers, employees, consultants, counselors, agents, shareholders, partners, members, the equity-holders of shareholders, partners or members which are entities, and the respective representatives, heirs, successors and assigns of each of them (collectively, the "EB Parties"), desires to consummate a transaction of any type with Salvat or any of its affiliates, including the licensing, assignment or purchasing of any rights in any way relating to the Gran Enciclopedia Salvat or any other Spanish or Portuguese language encyclopedic content of Salvat or any of its affiliates, during the Term, ("Potential Transaction") EB shall so advise OES and, prior to any such Potential Transaction being consummated, EB shall obtain the written permission of OES to consummate the same, which permission OES is willing to grant in connection with and upon the consummation of an agreement between EB and OES pursuant to which EB will be assigned certain rights of OES in exchange for the payment by EB to OES of a fee mutually agreed upon between EB and OES.

Leah Mansoor
March 11, 2008
Page 2

4.      All interactions of EB with Salvat shall be conducted solely by executive officers of EB. In its interactions with Salvat, the EB Parties shall not take any positions or make any statements which are adverse or in any way may harm the interests or rights of OES. No EB Parties shall have any rights whatsoever to act on behalf of OES and shall communicate this express limitation to Salvat at the outset of the discussions between EB and Salvat. EB shall provide to OES, promptly upon each interaction between any EB Parties and Salvat, a detailed written report of the content of each such interaction.

5.      The EB Parties shall not be permitted to disclose or otherwise reveal to Salvat or any other third party, directly or indirectly, under any circumstances or in any manner, any confidential information in any way related to OES.

6.      This Letter Agreement may be amended only by a writing executed by both Parties.

7.      This Letter Agreement may be executed in one or more counterparts, each such counterpart being deemed to be an original instrument, all of which shall constitute one and the same instrument. Duly signed signature pages of this Letter Agreement sent by facsimile or email transmission shall constitute effective execution and delivery of this Letter Agreement as to OES and EB and may be used in lieu of the original Letter Agreement for all purposes. Signatures of OES or EB transmitted by facsimile or email shall be deemed to be their original signatures for all purposes.

8.      Each of OES and EB irrevocably submits to the exclusive jurisdiction of (a) the courts of the State of Illinois, Cook County, or (b) the United States Districts Court for the Northern District of Illinois, for the purpose of any suit, action or other proceeding arising out of this Letter Agreement. Each of OES and EB agrees to commence such action, suit or proceeding either in the United States District Court for the Northern District of Illinois or, if such suit, action or other proceedings may not be brought in such court for jurisdictional reasons, in the courts of the State of Illinois, Cook County. Each of OES and EB agrees that service of any process, summons, notice or documents by US certified mail, return receipt requested, to such Party's respective address set forth in the first paragraph of this Letter Agreement (or to such other address as either Party previously notifies the other in writing) shall be effective service of process for any action, suit or proceeding in Illinois. Each of OES and EB irrevocably and unconditionally waives any objections to the laying of venue of any action, suit or proceeding arising out of this Letter Agreement in (i) the courts of the State of Illinois, Cook County, or (ii) the United States District Court for the Northern District of Illinois, and hereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.

9.      In the event of a breach of this Letter Agreement by any of the EB Parties, on the one side, or OES, on the other side, (such party, the "Breaching Party") the Party not related to the Breaching Party may recover all reasonable costs (including attorneys' fees and costs and other litigation fees and costs) which it incurs in order to enforce the terms of this Letter Agreement from the Party related to the Breaching Party.

10.     Each Party represents and warrants to the other Party that: it has full rights, power and authority to enter into this Letter Agreement and to fulfill all the obligations contemplated

Leah Mansoor
March 11, 2008
Page 3

hereunder; the execution and delivery of this Letter Agreement has been duly authorized by all necessary action; and this Letter Agreement constitutes a legal binding agreement of the Parties, enforceable against them in accordance with its terms.

11.    In executing this Letter Agreement, each of the Parties represents and warrants that they are doing so of their own free will and that they are not relying on any oral or written promises, representations or commitments which are not expressly set forth herein.

12.    This Letter Agreement shall inure to the benefit of, and be binding upon, both of OES and EB and their respective successors, heirs, representatives and assigns, as the case may be. Except as expressly set forth in this Letter Agreement (including, without limitation, the preceding sentence), nothing in this Letter Agreement shall confer upon any person who is not OES or EB, or the legal representatives of such person, any rights (including rights as a third party beneficiary) or remedies of any nature or kind whatsoever under or by reason of this Letter Agreement.

15.    This Letter Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Illinois, without giving effect to the conflicts of laws principles thereof.

If the contents of this Letter Agreement correctly reflect the agreement between us, please so indicate by signing and returning the enclosed copy of this Letter Agreement at your earliest convenience.

Best regards,

**ONLINE EDUCATION SYSTEMS, LLC**

By: _____
Name: Markus Sleuwen
Title:  President

Agreed to and accepted as of this ___day of March, 2008.

**ENCYCLOPAEDIA BRITANNICA, INC.**

Signature: _____
Name:        Leah Mansoor
Title:        Vice President

# EXHIBIT 5



**DOUGLAS N. MASTERS**
Partner

321 North Clark Street
Suite 2300
Chicago, IL  60610

Direct  312.464.3144
Main   312.464.3100
Fax    312.577.0828
dmasters@loeb.com

Via Certified Mail

March 25, 2008

Mr. Markus Sleuwen Guerrero
President
Online Education Systems, LLC
1511 Franklin Avenue
River Forest, IL 60305

Re:  Termination of October 4, 2005 License and Distribution Agreement between
     Online Education Systems, LLC (OES) and Encyclopaedia Britannica, Inc. (EB)

Dear Mr. Guerrero:

I am writing you in my capacity as outside counsel to EB in connection with this matter.

Unfortunately, the moratorium set forth in EB's December 26, 2007, letter is ending without OES having complied with its obligations thereunder.  Moreover, OES remains in breach of the License and Distribution Agreement as set forth in EB's November 28, 2007, letter.  Finally, Salvat terminated its agreement with OES last year, and, as you indicated in your March 4 2008 meeting with EB, OES will not be able to provide EB with the Gran Salvat encyclopedia as required under the License and Distribution Agreement.  Access to the Gran Salvat, as you know, is the essence of the License and Distribution Agreement, and OES' failure to provide that content renders that Agreement a nullity to EB.

In light of the above, EB is terminating the License and Distribution Agreement effective at the close of business March 31, 2008.  In accordance with the terms of that Agreement, EB expects OES to temporarily maintain the Web site and provide services to current subscribers.  We suggest a meeting with Ms. Leah Mansoor, EB's Sr. Vice President/International, to coordinate the transition of this business.  Please let her know your availability in early April.

EB also is exercising its Purchase Option under Paragraph 7 of the Agreement.  To assist EB in calculating the Purchase Price, please provide us with the information set forth in Paragraph 7.2 by April 15, 2008.

EB also will need to confer with Salvat in order to determine the value of the assets of OES that EB will be purchasing.  As you are well aware, OES never organized a meeting among OES, Salvat and EB as provided for in the December 26, 2007 letter, and OES recently tried to impose unreasonable and oppressive conditions on separate talks between EB and Salvat.  At this point, EB needs to understand Salvat's position regarding the upshot of its termination of its Agreement with OES, and whether, through EB's exercise of the Purchase Option, EB can acquire rights to the Gran Salvat.  We will keep you informed of the progress of these discussions.

CH41110.1
211625-10003

A limited liability partnership including professional corporations



Mr. Markus Sleuwen Guerrero
March 25, 2008
Page 2

Finally, it is now appropriate for OES to pay EB the $25,550 owing at this time for December, 2007 fees outstanding under the separate consulting agreement ($1,750), 4th quarter of 2007 royalties past due ($5,055), and marketing fees due for the 4th quarter of 2007 ($6,250) and 1st quarter of 2008 ($12,500).

Cordially,

Douglas N. Masters
Partner

cc:    William J. Bowe, Esq.

# EXHIBIT 6

MILLER SHAKMAN & BEEM LLP

ATTORNEYS AND COUNSELORS

180 NORTH LA SALLE STREET
SUITE 3600
CHICAGO, ILLINOIS 60601
TELEPHONE (312) 263-3700
FAX (312) 263-3270

April 9, 2008

WRITER'S DIRECT LINE
(312) 759-7218

**VIA E-MAIL**
**CONFIRMATION VIA REGULAR MAIL**
Douglas N. Masters, Esq.
LOEB & LOEB, LLP
321 North Clark Street
Chicago, Illinois 60610

> Re:  *Online Education Systems, LLC*

Dear Mr. Masters:

I represent Online Education Systems, LLC ("OES"). I am in receipt of your letter of April 8, 2008 to OES' Markus Sleuwen Guerrero and its attachments.

OES disputes Encyclopedia Britannica, Inc.'s ("EB") contention that OES is in default under the October 4, 2005 License and Distribution Agreement between OES and EB. OES will address EB's erroneous claim of default in later correspondence.

The purpose of this letter is to advise you that, as representatives of EB are aware, OES and Salvat are engaged in extensive discussions that are nearing completion. When completed, those discussions will result in Salvat providing its Gran Encyclopedia Salvat to OES. If EB engages in any communications with Salvat, as your March 25, 2008 letter threatens, and if those communications in any way adversely impact the ongoing discussions between OES and Salvat, OES will sue EB for breach of contract, tortious interference with contractual relations, tortious interference with prospective economic advantage and any other applicable cause of action.

Sincerely,

Eric A. Oesterle

EAO/tml

cc:   Mr. Markus Sleuwen Guerrero

✎ AO 121 (6/90)

| TO: | |
|---|---|
| **Register of Copyrights**<br>**Copyright Office**<br>**Library of Congress**<br>**Washington, D.C. 20559** | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION OR APPEAL**<br>**REGARDING A COPYRIGHT** |

In compliance with the provisions of 17 U.S.C. 508, you are hereby advised that a court action or appeal has been filed on the following copyright(s):

| ☒ ACTION   ☐ APPEAL | COURT NAME AND LOCATION |
|---|---|
| | U.S. District Court, Northern District of Illinois |
| DOCKET NO.            DATE FILED | 2044 Dirksen Building, 210 South Dearborn Street<br>Chicago, Illinois 60604 |

| PLAINTIFF | DEFENDANT |
|---|---|
| ENCYCLOPAEDIA BRITANNICA, INC. | MARKUS SLEUWEN GUERRERO and ONLINE EDUCATION SYSTEMS, LLC |

| COPYRIGHT REGISTRATION NO. | TITLE OF WORK | AUTHOR OR WORK |
|---|---|---|
| 1 | SEE ATTACHED LISTING | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above-entitled case, the following copyright(s) have been included:

| DATE INCLUDED | INCLUDED BY<br>☐ Amendment   ☐ Answer   ☐ Cross Bill   ☐ Other Pleading | |
|---|---|---|
| COPYRIGHT REGISTRATION NO. | TITLE OF WORK | AUTHOR OF WORK |
| 1 | | |
| 2 | | |
| 3 | | |

In the above-entitled case, a final decision was rendered on the date entered below. A copy of the order or judgment together with the written opinion, if any, of the court is attached.

| COPY ATTACHED<br>☐ Order   ☐ Judgment | WRITTEN OPINION ATTACHED<br>☐ Yes   ☐ No | DATE RENDERED |
|---|---|---|
| CLERK | (BY) DEPUTY CLERK | DATE |

**DISTRIBUTION:**

1) Upon initiation of action,
   mail copy to Register of Copyrights

2) Upon filing of document adding copyright(s),
   mail copy to Register of Copyrights

3) Upon termination of action,
   mail copy to Register of Copyrights

4) In the event of an appeal, forward copy to Appellate Court

5) Case File Copy

| Copyright Registration No. | Title of Work | Author of Work |
|---|---|---|
| TX0004463702 | New Encyclopaedia  Britannica | Encyclopaedia Britannica, Inc. |
| TX0003053801 | New Encyclopaedia  Britannica | Encyclopaedia Britannica, Inc. |
| TX0002787808 | New Encyclopaedia  Britannica | Encyclopaedia Britannica, Inc. |
| TX0002577200 | New Encyclopaedia  Britannica | Encyclopaedia Britannica, Inc. |
| TX0002278849 | New Encyclopaedia  Britannica | Encyclopaedia Britannica, Inc. |
| TX0002002032 | New Encyclopaedia  Britannica | Encyclopaedia Britannica, Inc. |
| TX0002002031 | New Encyclopaedia  Britannica | Encyclopaedia Britannica, Inc. |
| TX00011540751 | New Encyclopaedia  Britannica | Encyclopaedia Britannica, Inc. |
| TX6542056 | Enciclopedia Compacta Britannica | Encyclopaedia Britannica, Inc. |
| V 1853P257 | Britannica & 10 other titles; audiovisual works | Encyclopaedia Britannica, Inc. |
| TX0003826336 | Britannica atlas | Encyclopaedia Britannica, Inc. |