## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ENCYCLOPEDIA BRITANNICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 1:08-cv-02752 |
| | ) | |
| MARKUS SLEUWEN GUERRERO and | ) | Judge Ruben Castillo |
| ONLINE EDUCATION SYSTEMS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER OF DEFENDANT MARKUS SLEUWEN GUERRERO
## TO PLAINTIFF'S COMPLAINT

Defendant Markus Sleuwen Guerrero ("Sleuwen") responds to plaintiff's Complaint as follows:

ALLEGATION No. 1:    This is an action to obtain immediate injunctive relief, permanent injunctive relief, declaratory relief, monetary damages and attorneys' fees and costs arising from Defendants' unauthorized use of Plaintiff's marks, copyrighted content and proprietary rights in willful disregard of Plaintiff's rights following termination of a license, as well as to recover for breach of that license and conversion.

RESPONSE: Sleuwen admits that plaintiff's complaint seeks to obtain immediate injunctive relief, permanent injunctive relief, declaratory relief, monetary damages and attorneys' fees and costs purportedly arising from defendants' alleged unauthorized use of marks, copyrighted content and proprietary rights claimed by plaintiff in purported willful disregard of plaintiff's alleged rights following the purported termination of a license, as well as for an alleged breach of that license and a purported conversion. Sleuwen denies that EB is entitled to any of the relief it seeks or that EB has any valid claims against him, and denies the remaining allegations of Paragraph No. 1.

ALLEGATION No. 2:     Plaintiff, Encyclopedia Britannica, Inc. ("EB"), is a Delaware corporation, with its principal place of business in Chicago, Illinois.

RESPONSE:  Sleuwen admits the allegations of Paragraph No. 2.

ALLEGATION No. 3:     Defendant Markus Sleuwen Guerrero ("Sleuwen"), is President of Defendant, Online Education Systems, LLC ("OES"), and resides in Illinois in this District.

RESPONSE:  Sleuwen admits the allegations of Paragraph No. 3.

ALLEGATION No. 4:     Defendant, OES, is a Delaware corporation, with its principal place of business in Chicago, Illinois.

RESPONSE:  Sleuwen admits that Online Education Systems, LLC ("OES") is a Delaware limited liability company with its principal place of business in this District. Sleuwen denies the remaining allegations of Paragraph No. 4.

ALLEGATION No. 5:     Sleuwen has directed and controlled the activities of OES complained of in this action.

RESPONSE:  Sleuwen admits that he has been the president of OES since 2007, and denies the remaining allegations of Paragraph No. 5.

ALLEGATION No. 6:     This Court has jurisdiction by virtue of the fact that this is a civil action arising under the Lanham Act (15 U.S.C. §1051 *et seq.*) and the Copyright Act (17 U.S.C. §101 *et seq.*), jurisdiction being conferred by 15 U.S.C. §1121 and 28 U.S.C. §1338(a). This Court has supplemental jurisdiction over all related state and common law claims in accordance with 28 U.S.C. §1338(b) and 28 U.S.C. §1367.

RESPONSE:  Sleuwen admits that some of plaintiff's claims arise under the Lanham and Copyright Acts, and that this Court has jurisdiction to hear this case under 15 U.S.C. §1121 and 28 U.S.C. §1338(a). Sleuwen further admits that the state and common law claims made by plaintiff in this case are "related" to the claims that are at issue in plaintiff's Lanham or Copyright Act claims against it, and thus admits that, under 28

U.S.C. §1138(b) and 28 U.S.C. §1367, this Court has supplemental jurisdiction over all of those related state and common law claims as long as plaintiff's Lanham and Copyright Act claims are pending. Sleuwen denies the remaining allegations of Paragraph No. 6.

ALLEGATION No. 7:    OES has consented to jurisdiction and venue in this Court.

RESPONSE: Sleuwen admits that OES consented to the jurisdiction of state and federal courts located in Cook County, Illinois and denies the remaining allegations of Paragraph No. 7.

ALLEGATION No. 8:    EB is the nation's leading provider of encyclopedic and other reference works and content in print and electronic form. EB enjoys an unmatched reputation for reliable and authoritative publications.

RESPONSE: Sleuwen admits that EB is a well known provider of encyclopedic and other reference works and content in print and electronic form in the United States, and that EB has a reputation regarding the reliability and authoritativeness of its publications. Sleuwen denies the remaining allegations of Paragraph No. 8.

ALLEGATION No. 9:    EB markets its content and works in many languages, including Spanish. EB's content and works are provided via various websites on a subscription basis to consumers and a variety of institutions, including schools and libraries.

RESPONSE: Sleuwen admits that some of EB's content and works are provided via various websites on a subscription basis to consumers and a variety of institutions, including schools and libraries, but states that some of EB's content and works are provided for free to consumers on EB's consumer website. Sleuwen admits the remaining allegations of Paragraph No. 9.

ALLEGATION No. 10:    Since long prior to any date upon which OES commenced engaging in the complained of wrongful conduct, EB has

continuously used in commerce the marks BRITANNICA,
EB, and a distinctive trade dress to identify information
services and encyclopedic content

.

RESPONSE: Sleuwen is without knowledge or information sufficient to form a belief

about the truth of the allegations regarding EB's alleged trade dress. Sleuwen admits the

remaining allegations of Paragraph No. 10.

ALLEGATION No. 11:        EB owns federal registrations for its BRITANNICA and
EB marks, including the following:

| BRITANNICA BOOK OF THE YEAR | 825,337 | Reference volumes published annually devoted to current events |
|---|---|---|
| BRITANNICA | 1,309,991 | Reference works in particular, junior encyclopedias and atlases |
| BRITANNICA | 1,506,869 | Educational materials for adults and children, namely encyclopedias, dictionaries, atlases, reference books, booklets, charts, posters, manuals and pamphlets; Cinematographic motion picture films, slides, filmstrips, audio and video cassettes and computer programs; retail outlet distributorship, mail order services in the fields of education management and businesses |
| BRITANNICA ONLINE | 1,918,562 | Computer services, namely providing access to computer databases of information in the field of encyclopedias, yearbooks, and dictionaries |
| BRITANNICA | 2,287,468 | Computer services, namely providing access to computer database of information dealing with educational reference materials for adults and children in the field of encyclopedias, yearbooks, and dictionaries |
| BRITANNICA.COM | 2,550,643 | Promotion of goods and services of others by placing advertisements and promotional displays in an electronic online website accessed through global computer network; providing electronic mail; providing search engines for obtaining data on a global |

| | | computer network including organizing, creating indices and displaying directories of information, websites and other resources |
|---|---|---|
| EB | 2,217,453 | Computer services, namely providing access to computer databases of information in the field of encyclopedias, yearbooks and dictionaries |

RESPONSE:  Sleuwen lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 11.

ALLEGATION No. 12:     These registrations constitute *prima facie* evidence of the validity of the registered mark, of EB's ownership of the mark, and of EB's exclusive right to use the mark on or in connection with the goods or services specified in the registration. 15 U.S.C. §1115.

RESPONSE:  Sleuwen admits that 15 U.S.C. § 1115 provides in part that "a mark registered on the principal register provided by this chapter and owned by a party to an action shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified  in the registration subject to any conditions or limitations stated therein. . . ."  Sleuwen lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph No. 12.

ALLEGATION No. 13:     EB has expended substantial resources to advertise and promote its BRITANNICA and EB marks and related trade dress, including the famous Thistle design, and has offered many millions of dollars worth of services and sold hundreds of millions of dollars worth of products under and in connection with its BRITANNICA and EB marks, and related trade dress.

RESPONSE: Sleuwen lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the worth of services offered or products sold by plaintiff under and in connection with plaintiff's marks and trade dress; and about whether EB's Thistle design is famous. Sleuwen admits the remaining allegations of Paragraph No. 13.

ALLEGATION No. 14:      By virtue of EB's long use, widespread advertising and enormous sales, the BRITANNICA and EB marks and related trade dress have become well-known as symbols of EB's products and services, and the products and services of those authorized by EB to use its BRITANNICA and EB marks and trade dress, and therefore has come to represent goodwill of great value which is owned by EB.

RESPONSE: Sleuwen admits that the BRITANNICA mark is well-known. Sleuwen lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the length of use, the amount of advertising or the amount of the sales by EB using its BRITANNICA and EB marks, and lacks knowledge or information sufficient to form a belief as to truth of the allegations regarding EB's alleged trade dress or goodwill. Sleuwen lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph No. 14.

ALLEGATION No. 15:      EB's encyclopedic and other reference works are original to EB and constitute copyrightable subject matter.

RESPONSE: Sleuwen lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 15.

ALLEGATION No. 16:      EB has complied with in all respects with the provisions of the Copyright Laws of the United States, 17 U.S.C. §101 *et seq.*, has secured the exclusive rights and privileges in its encyclopedic and other reference works, and has received Certificates of Registration from the Register of Copyright for its encyclopedic and other reference works, including the following registrations:

| | Title | Registration No. |
|---|---|---|
| 1. | New Encyclopedia Britannica | TX0004463702 |
| 2. | New Encyclopedia Britannica | TX0003053801 |
| 3. | New Encyclopedia Britannica | TX0002787808 |
| 4. | New Encyclopedia Britannica | TX0002577200 |
| 5. | New Encyclopedia Britannica | TX0002278849 |
| 6. | New Encyclopedia Britannica | TX0002002032 |
| 7. | New Encyclopedia Britannica | TX0002002031 |
| 8. | New Encyclopedia Britannica | TX0001540751 |
| 9. | Enciclopedia Compacta Britannica | TX6542056 |
| 10. | Britannica & 10 other titles; audiovisual works | V1853P257 |
| 11. | Britannica atlas | TX0003826336 |

RESPONSE:  Sleuwen lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 16.

ALLEGATION No. 17:  EB is the sole proprietor of all rights, title and interest in its encyclopedic and other reference works.

RESPONSE:  Sleuwen lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 17.

ALLEGATION No. 18:  In 2005, Defendants approached EB to obtain a license to offer online services (the "Services") utilizing EB's BRITANNICA mark and certain copyrighted Spanish language reference works of EB in combination with Spanish language reference works which Defendants were negotiating to obtain a license to use from Editorial Salvat S. L. ("Salvat").

RESPONSE:  Sleuwen admits that OES approached EB to obtain a license to offer online services utilizing EB's BRITANNICA mark and certain copyrighted Spanish language reference works of EB in combination with Spanish language reference works which OES was negotiating to obtain a license to use from Editorial Salvat S.L. ("Salvat").  Sleuwen denies the remaining allegations of Paragraph No. 18.

ALLEGATION No. 19:  On July 7, 2005, OES entered into a license agreement with Salvat (the "Salvat Agreement").  Because that agreement is confidential, it will be filed under seal pursuant to motion

in connection with EB's motion for injunctive relief. In the Salvat Agreement, OES acquired a restricted right to use Salvat's content in connection with the Services marketed under the name of Salvat and Encyclopedia Britannica.

RESPONSE: Sleuwen lacks knowledge or information sufficient to form a belief about the truth of the allegation regarding whether EB will file the EB/OES Agreement with the Court under seal. Sleuwen admits that OES and Salvat entered into an Agreement, but states that this Agreement speaks for itself and denies any allegations inconsistent with it. Sleuwen admits the remaining allegations of Paragraph No. 19.

ALLEGATION No. 20: The Salvat Agreement contemplated the consummation of the EB/OES Agreement (the "EB/OES Agreement" or "Agreement") which was concluded effective as of October 4, 2005 after much negotiation.

RESPONSE: Sleuwen admits the allegations of Paragraph No. 20.

ALLEGATION No. 21: In turn, the EB/OES Agreement provides that OES would launch the Services in 2006 on the foundation of the substantial text and multimedia database of the *Gran Enciclopedia Salvat*, along with Salvat's ongoing editorial involvement and delivery of updated content. The EB/OES Agreement limited OES' right to use EB's copyrighted content and intellectual property only as part of online services bundled with Salvat content. OES is obligated to pay EB royalties and marketing fees as part of the Agreement. The EB/OES Agreement is confidential and will be filed under seal pursuant to motion in connection with EB's motion for injunctive relief.

RESPONSE: Sleuwen states that the EB/OES Agreement speaks for itself and denies any allegations inconsistent with its terms. Sleuwen admits that the EB/OES Agreement is confidential. Sleuwen lacks knowledge or information sufficient to form a belief about the truth of the allegation regarding whether EB will file the EB/OES Agreement with the Court under seal. Sleuwen denies that EB is entitled to any injunctive relief. Sleuwen denies the remaining allegations of Paragraph No. 21.

ALLEGATION No. 22:      In connection with the EB/OES Agreement, EB collaborated with OES in developing a Website at http://www.ebrisa.com, that contains intellectual property of EB.  The URL is a combination of EB's EB trademark and SA for Salvat.

RESPONSE:  Sleuwen denies the last sentence of Paragraph No. 22.  Answering further,

Sleuwen states that OES' URL is the combination of "E" for electronic and "brisa" which

is Spanish for breeze.  Sleuwen denies the remaining allegations of Paragraph No. 22.

ALLEGATION No. 23:      The Website at http://www.ebrisa.com uses EB's [sic] prominently display's [sic] EB's BRITANNICA mark and distinctive trade dress, including the Thistle design, on its homepage.  A copy of the www.ebrisa.com homepage is attached as Exhibit 1.

RESPONSE:  Sleuwen admits that the copy of OES' www.ebrisa.com homepage

attached to plaintiff's complaint as Exhibit 1 depicts that homepage as of May 9, 2008,

but not OES' current homepage.  Sleuwen denies the remaining allegations of Paragraph

No. 23.

ALLEGATION No. 24:      Pursuant to the EB/OES Agreement, Defendants launched the Services at http://ebrisa.com utilizing EB's BRITANNICA mark and certain Spanish language reference works of EB in mid-2006, but failed to deliver the *Gran Enciclopedia Salvat* and the updated content as required by the EB/OES Agreement.

RESPONSE:  Sleuwen admits that, pursuant to the EB/OES Agreement, OES launched

the Services at http://ebrisa.com utilizing EB's BRITANNICA mark and certain Spanish

reference works of EB in mid-2006.  Sleuwen denies that the delivery of the *Gran

Enciclopedia Salvat* was required by the EB/OES Agreement to occur in mid-2006.

Sleuwen denies that it has failed to provide any updated content.  Sleuwen denies the

remaining allegations of Paragraph No. 24.

ALLEGATION No. 25:     The delivery of the *Gran Enciclopedia Salvat* and Salvat's ongoing editorial involvement in maintaining the quality of the Services, pursuant to the EB/OES Agreement, was the essence of the Agreement.  Indeed, the EB/OES Agreement provides that EB may terminate the Agreement, [sic] at any time following termination of the Salvat Agreement.

RESPONSE:  Sleuwen states that the EB/OES Agreement speaks for itself and denies

any allegations inconsistent with it.

ALLEGATION No. 26:     Despite EB's repeated demands that OES comply with its obligations under the EB/OES Agreement, OES has failed to deliver the required content in clear breach of the Agreement.  Moreover, this failure meant that the Services were not being maintained in accordance with Britannica Standards referred to in the EB/OES Agreement.

RESPONSE:  Sleuwen admits that Salvat has failed to deliver to OES the *Gran

Enciclopedia Salvat*.  Sleuwen denies the remaining allegations of Paragraph No. 26.

ALLEGATION No. 27:     Indeed, by Sleuwen's own admissions, OES' failure to provide this updated content has caused much damage to EB.

RESPONSE:   Sleuwen denies the allegations of Paragraph No. 27.

ALLEGATION No. 28:     On November 28, 2007, EB sent Defendants written notice, pursuant to the EB/OES Agreement, that OES is in material breach of the EB/OES Agreement due to its failure to maintain the Services in accordance with Britannica Standards and specifically, its failure to provide the updated content.  Attached as Exhibit 2 is a copy of the letter dated November 28, 2007, sent by EB to Defendants. Exhibit 2 constitutes notice of breach under the terms of the EB/OES Agreement.  Pursuant to the EB/OES Agreement, EB provided OES a 30-day grace period to cure this deficiency.

RESPONSE: Sleuwen admits that, on or shortly after November 28, 2007, OES

received from EB the letter, a copy of which is attached to plaintiff's Complaint as

Exhibit 2.  Sleuwen states that this letter speaks for itself and denies any allegations

inconsistent with it.  Sleuwen denies that this letter constitutes a proper notice of breach under the terms of the EB/OES Agreement.  Section 4.1 of the EB/OES Agreement provides a specific procedure that EB must follow in the event that it contends that any Content made available on the Services does not comply with "Britannica Standards" as defined by the EB/OES Agreement.  EB did not follow those procedures and thus its November 28, 2007 notice was invalid and of no effect.  Sleuwen denies the remaining allegations of Paragraph No. 28.

ALLEGATION No. 29:     Defendants did not contest or dispute that the delivery of the updated content was owed, rather they repeatedly represented that the content was forthcoming.

RESPONSE:  Sleuwen denies the allegations of Paragraph No. 29.

ALLEGATION No. 30:     Reasonably relying on these representations and promises, EB delayed in filing a lawsuit and agreed to a mutual moratorium, suspending any actions until March 31, 2008 and providing, amount other things, that OES would comply with its editorial duties by March 31, 2008. Attached as Exhibit 3 is a copy of the mutual moratorium agreement dated December 26, 2007.

RESPONSE:  Sleuwen lacks knowledge or information sufficient to form a belief as to the truth of the allegation about what, if anything, EB relied upon.  Sleuwen admits that Exhibit 3 of plaintiff's complaint is a copy of letter dated December 26, 2007 from EB to OES and that Sleuwen signed the second page of that letter on or shortly after December 26, 2007.  Sleuwen states that this letter speaks for itself and denies any allegations inconsistent with it.  Sleuwen denies the remaining allegations of Paragraph No. 30.

ALLEGATION No. 31:     Thereafter, EB learned, by Sleuwen's own admission, that OES' failure to deliver the *Gran Enciclopedia Salvat* and updated content was due to Salvat's termination of the Salvat Agreement.

RESPONSE: Sleuwen admits that he advised EB that Salvat purported to have terminated the OES/Salvat Agreement but states that such communication occurred on October 4, 2007, well before OES and EB agreed to a temporary moratorium. OES also advised EB that OES was contesting Salvat's purported termination. Sleuwen denies the remaining allegations of Paragraph No. 31.

ALLEGATION No. 32:    Accordingly, EB requested permission from OES to negotiate with Salvat directly regarding the availability and currency of the Gran Enciclopedia Salvat, but Defendants' imposed unreasonable and oppressive conditions on separate talks between EB and Salvat. Attached as Exhibit 4 is a copy of the letter dated March 11, 2008, sent by Defendants to EB regarding its request to engage in separate talks with Salvat.

RESPONSE: Sleuwen admits that EB requested permission from OES to engage in discussion with Salvat purportedly to assist OES in the resolution of its dispute with Salvat, and that EB did in fact engage in some communications with Salvat. Sleuwen admits that Exhibit 4 of plaintiff's complaint is a copy of OES' March 11, 2008 letter to EB. Sleuwen denies the remaining allegations of Paragraph No. 32.

ALLEGATION No. 33:    The moratorium ended without OES having complied with its obligations thereunder and OES remaining in breach of the EB/OES Agreement. Moreover, it became clear to EB that because of the termination of the Salvat Agreement, OES would be unable to provide EB with the Gran Enciclopedia Salvat, the essence of the EB/OES Agreement as originally contemplated. Thus, the EB/OES Agreement was effectively rendered null and void.

RESPONSE: Sleuwen lacks knowledge or information sufficient to form a belief about the truth of the allegation of what "became clear to EB." Sleuwen admits that the moratorium ended. Sleuwen denies the remaining allegations of Paragraph No. 33.

ALLEGATION No. 34:    In light of OES' inability and failure to provide EB with the Gran Enciclopedia Salvat and updated content, EB sent

> Defendants notice on March 27, 2008, that it was
> terminating the EB/OES Agreement effective March 31,
> 2008. Attached as Exhibit 5 is a copy of the letter dated
> March 25, 2008, sent by EB to defendants. Exhibit 5
> constitutes notice of termination under the EB/OES
> Agreement.

RESPONSE: Sleuwen admits that Exhibit 5 of plaintiff's complaint is a copy of a

March 25, 2008 letter that OES received from EB on or shortly after April 9, 2008.

Sleuwen states that this letter speaks for itself and denies any allegations inconsistent

with it. Sleuwen denies that this March 25, 2008 letter constitutes proper notice of

termination under the terms of the EB/OES Agreement. Sleuwen denies the remaining

allegations of Paragraph No. 34.

ALLEGATION No. 35:    Pursuant to the EB/OES Agreement, OES had certain
obligations upon termination including removing the
licensed intellectual property from the Services, purging
any and all portions of the licensed intellectual property
from system services and hard disk drives in its possession
or under its control, and returning or destroying all of EB's
confidential and proprietary information and materials
("Confidential Information"). The EB/OES Agreement
further provided EB with a purchase option upon
termination, which grants EB the option to purchase the
intangible assets owned by OES that are used in connection
with the Services.

RESPONSE: Sleuwen admits that the EB/OES Agreement contains provisions

addressing OES' obligations upon termination of that Agreement and provides EB with

an option to purchase certain of OES' assets pursuant to the terms and conditions of that

Agreement. Sleuwen denies the remaining allegations of Paragraph No. 35.

ALLEGATION No. 36:    In EB's termination letter of March 25, 2008 (*see* Exhibit
5), EB notified OES that it was exercising its purchase
option and requested that OES comply with its termination
obligations and provided OES' financial information in
connection with the purchase option. EB also informed
OES that it will need to confer with Salvat in order to

<div style="margin-left:2em">determine the value of the assets that EB will be purchasing.</div>

RESPONSE:  Sleuwen denies the allegation that Exhibit 5 to plaintiff's complaint

constitutes a "termination letter" under the EB/OES Agreement.  Sleuwen states that

Exhibit 5 speaks for itself and denies any allegations inconsistent with it.  Sleuwen denies

the remaining allegations of Paragraph No. 36.

| | |
|---|---|
| ALLEGATION No. 37: | Rather than comply with its termination obligations under the EB/OES Agreement, OES, through its attorneys' [sic], threatened EB with a lawsuit alleging breach of contract, tortious interference with contractual relations, and tortious interference with prospective economic advantage.  A copy of the letter dated April 9, 2008, from OES' attorneys is attached as Exhibit 6. |

RESPONSE:  Sleuwen admits that Exhibit 6 is a copy of a letter dated April 9, 2008 sent

by OES' counsel to EB's counsel on April 9, 2008.  Sleuwen states that this letter speaks

for itself and denies any allegations inconsistent with it.  Sleuwen denies the remaining

allegations of Paragraph No. 37.

| | |
|---|---|
| ALLEGATION No. 38: | On May 1, 2008, notwithstanding termination of the EB/OES Agreement and EB's ownership of the EB mark, OES filed an application with the United States Patent and Trademark Office for registration of the EBRISA mark (Serial NO. 77462642) for use in connection with "providing an online publication in the nature of an interactive encyclopedia in the field of Spanish language; providing online non-downloadable electronic dictionaries." |

RESPONSE:  Sleuwen admits that, on May 1, 2008, OES filed an application with the

United States Patent and Trademark Office for registration of the EBRISA mark (Serial

NO. 77462642) for use in connection with "providing an online publication in the nature

of an interactive encyclopedia in the field of Spanish language; providing online non-

downloadable electronic dictionaries." Sleuwen denies the remaining allegations of

Paragraph No. 38.

## COUNT I

ALLEGATION No. 39:        Plaintiff realleges the allegations of paragraphs 1 to 38.

RESPONSE: Sleuwen realleges its responses to paragraphs 1 through 38 as its response

to Paragraph No. 39.

ALLEGATION No. 40:        Under the EB/OES Agreement, Defendants were
                          authorized by EB to utilize EB's intellectual property in
                          connection with the Services.

RESPONSE: Sleuwen states that the EB/OES Agreement speaks for itself and denies

any allegations inconsistent with it.

ALLEGATION No. 41:        Upon termination of the EB/OES Agreement, Defendants
                          were no longer authorized to use EB's BRITANNICA and
                          EB trademarks and related trade dress.

RESPONSE: Sleuwen denies the allegations of Paragraph No. 41.

ALLEGATION No. 42:        Despite the termination of the EB/OES Agreement,
                          Defendants continue to offer services in competition with
                          EB at http://www.ebrisa utilizing EB's BRITANNICA
                          trademark and related trade dress, various confidential and
                          proprietary information of EB, and copyrighted works of
                          EB.

RESPONSE: Sleuwen denies that the EB/OES Agreement has been terminated, denies

that OES offers services in competition with EB and denies that OES continues "to utilize

EB's BRITANNICA trademark and related trade dress" other than in accordance with

EB/OES Agreement or EB's express written communications to OES. Sleuwen denies

the remaining allegations of Paragraph No. 42.

ALLEGATION No. 43:        OES has acknowledged the validity and EB's ownership of
                          the BRITANNICA mark, and the right of EB to intellectual

property provided by EB in connection with collaboration under the EB/OES Agreement.

RESPONSE:  Sleuwen states that the EB/OES Agreement speaks for itself and denies any allegations inconsistent with it.

ALLEGATION No. 44:    Defendants have continued to use the BRITANNICA and EB marks, related trade dress and other intellectual property of EB with full knowledge of, and in willful disregard of EB's rights, and with the intent to obtain a commercial advantage that Defendants otherwise would not have.

RESPONSE:  Sleuwen denies the allegations of Paragraph No. 44.

ALLEGATION No. 45:    Defendants' acts are likely to cause confusion, mistake or deception with EB's registered marks.

RESPONSE:  Sleuwen denies the allegations of Paragraph No. 45.

ALLEGATION No. 46:    Defendants' acts constitute trademark counterfeiting in violation of the Trademark Law of the United States, 15 U.S.C. §1114.

RESPONSE:  Sleuwen denies the allegations of Paragraph No. 46.

ALLEGATION No. 47:    Defendants' acts constitute willful trademark infringement in violation of 15 U.S.C. §1114.

RESPONSE:  Sleuwen denies the allegations of Paragraph No. 47.

ALLEGATION No. 48:    OES has acknowledged in the EB/OES Agreement that there is no adequate remedy at law for breach of the Agreement and that such conduct would result in irreparable harm.  As such, OES has agreed that EB is entitled to specific performance and injunctive relief without the posting of a bond or other security in the event of a breach.

RESPONSE:  Sleuwen states that the EB/OES Agreement speaks for itself and denies any allegations inconsistent with it.  Sleuwen denies the remaining allegations of Paragraph No. 48.

ALLEGATION No. 49:        EB will continue to suffer irreparable injury if Defendants are not enjoined or specific performance is not ordered.

RESPONSE:   Sleuwen denies the allegations of Paragraph No. 49.

## COUNT II

ALLEGATION No. 50:        Plaintiff realleges the allegations of Paragraphs 1 to 38.

RESPONSE:  Sleuwen realleges his responses to Paragraphs 1 through 38 as his response to Paragraph No. 50.

ALLEGATION No. 51:        Defendants' willful acts are likely to cause confusion or mistake, or to deceive as to Defendants' affiliation, connection, or association with EB, or as to the origin, sponsorship, or approval of Defendants' services.

RESPONSE:   Sleuwen denies the allegations of Paragraph No. 51.

ALLEGATION No. 52:        Defendants are engaged in unfair competition with EB, including passing off, in violation of 15 U.S.C. §1125(a), which if not enjoined will continue to cause irreparable injury to Plaintiff.

RESPONSE:   Sleuwen denies the allegations of Paragraph No. 52.

ALLEGATION No. 53:        Defendants' acts constitute unjust enrichment and unfair competition under the common law of the various states, including the state of Illinois.

RESPONSE:   Sleuwen denies the allegations of Paragraph No. 53.

## COUNT III

ALLEGATION No. 54:        Plaintiff realleges the allegations of Paragraphs 1 to 38.

RESPONSE:  Sleuwen realleges his responses to Paragraphs 1 through 38 as his response to Paragraph No. 54.

ALLEGATION No. 55:        Defendants' conduct constitutes deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 IL. Comp. Stat. Ann. 510/1 *et seq.*, the Illinois Consumer Fraud and Deceptive Business Practices Act,

815 IL. Comp. Stat. Ann. 505/12 *et seq.* and the common law of the State of Illinois, which if not enjoined will continue to cause irreparable injury to EB.

RESPONSE:  Sleuwen denies the allegations of Paragraph No. 55.

## COUNT IV

ALLEGATION No. 56:    Plaintiff realleges the allegations of Paragraphs 1 to 38.

RESPONSE:  Sleuwen realleges his responses to Paragraphs 1 through 38 as his response to Paragraph No. 56.

ALLEGATION No. 57:    Under the EB/OES Agreement, Defendants were authorized by EB to use the domain name ebrisa.com.

RESPONSE:  Sleuwen denies the allegations of Paragraph No. 57.

ALLEGATION No. 58:    Upon termination of the EB/OES Agreement, Defendants no longer were authorized to use the domain name ebrisa.com.

RESPONSE:  Sleuwen denies the allegations of Paragraph No. 58.

ALLEGATION No. 59:    Despite the termination of the EB/OES Agreement, Defendants, with a bad faith intent, to profit from EB's famous EB mark, continue to use the domain name ebrisa.com.

RESPONSE:  Sleuwen admits that OES is using the domain name ebrisa.com.  Sleuwen denies the remaining allegations of Paragraph No. 59.

ALLEGATION No. 60:    Defendants' aforesaid acts constitute cybersquatting in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. §1125(d).

RESPONSE:  Sleuwen denies the allegations of Paragraph No. 60.

## COUNT V

ALLEGATION No. 61:    Plaintiff realleges the allegations of Paragraphs 1 to 38.

RESPONSE: Sleuwen realleges his responses to Paragraphs 1 through 38 as his response to Paragraph No. 61.

ALLEGATION No. 62:     Under the EB/OES Agreement, Defendants were authorized by EB to utilize EB's copyrighted works in connection with the Services.

RESPONSE: Sleuwen states that the EB/OES Agreement speaks for itself and denies any allegations inconsistent with it.   Sleuwen admits the remaining allegations of Paragraph No. 62.

ALLEGATION No. 63:     Upon termination of the EB/OES Agreement, Defendants no longer were authorized to use EB's copyrighted encyclopedic works in connection with the Services.

RESPONSE: Sleuwen denies the allegations of Paragraph No. 63.

ALLEGATION No. 64:     Defendants continue to reproduce, distribute, and prepare derivative works based upon EB's copyrighted encyclopedic and other reference works.

RESPONSE: Sleuwen admits that OES continues to use EB's marks and content in OES' institutional website pursuant EB's express written authorization.  Sleuwen denies the remaining allegations of Paragraph No. 64.

ALLEGATION No. 65:     Defendants have acknowledged the validity and EB's ownership of the copyrighted encyclopedic and other reference works, and the right of EB to the intellectual property provided by EB in connection with collaboration under the EB/OES Agreement.

RESPONSE: Sleuwen states that the EB/OES Agreement speaks for itself and denies any allegations inconsistent with it.

ALLEGATION No. 66:     Defendants' acts constitute willful copyright infringement of EB's copyrighted encyclopedic and other reference works under 17 U.S.C. §501.

RESPONSE: Sleuwen denies the allegations of Paragraph No. 66.

ALLEGATION No. 67:        Defendants acts are without EB's authorization or consent.

RESPONSE:  Sleuwen denies the allegations of Paragraph No. 67.

## COUNT VI

ALLEGATION No. 68:        Plaintiff realleges the allegations of Paragraphs 1 to 38.

RESPONSE:  Sleuwen realleges his responses to Paragraphs 1 through 38 as his

response to Paragraph No. 68.

ALLEGATION No. 69:        EB has performed all of its obligations and conditions
                          precedent under the EB/OES Agreement.

RESPONSE:  Sleuwen denies the allegations of Paragraph No. 69.

ALLEGATION No. 70:        EB has notified OES that it materially failed to perform its
                          obligations under the EB/OES Agreement and provided
                          OES ample opportunity to cure its breaches.

RESPONSE:  Sleuwen states that Exhibits 3 and 5 speak for themselves and denies any

allegations inconsistent with them.    Sleuwen denies the remaining allegations of

Paragraph No. 70.

ALLEGATION No. 71:        OES has breached, and continues to breach, the EB/OES
                          Agreement, which breach has caused irreparable harm to
                          EB. Among other breaches, OES has failed to pay royalties
                          and marketing fees of at least $24,500.

RESPONSE:  Sleuwen denies the allegations of Paragraph No. 71.

ALLEGATION No. 72:        Pursuant to the EB/OES Agreement, within thirty days
                          after the close of each Calendar Quarter, OES is obligated
                          to provide EB with an accounting of its gross revenues, but
                          OES has not complied with this obligation.  Accordingly,
                          EB does not have access to the records and information
                          necessary to ascertain the precise amount of monies that
                          were paid to or received by Defendants, and as such, the
                          precise amount of additional unpaid royalties and
                          marketing fees.

RESPONSE:  Sleuwen states that the EB/OES Agreement speaks for itself and denies any allegations inconsistent with it.  Sleuwen denies the remaining allegations of Paragraph No. 72.

ALLEGATION No. 73:     Upon termination of the EB/OES Agreement, EB is entitled to exercise a purchase option and to require EOS [sic] to cease all use of and return to EB all intellectual property of EB.  OES has not complied with its obligations upon termination.

RESPONSE:  Sleuwen states that the EB/OES Agreement speaks for itself and denies any allegations inconsistent with it.  Sleuwen denies the remaining allegations of Paragraph No. 73.

ALLEGATION No. 74:     Without specific performance of the termination provisions of the EB/OES Agreement, EB will continue to suffer irreparable harm, as acknowledged by OES.

RESPONSE:  Sleuwen states that the EB/OES Agreement speaks for itself and denies any allegations inconsistent with it.  Sleuwen denies the remaining allegations of Paragraph No. 74.

## COUNT VII

ALLEGATION No. 75:     Plaintiff realleges the allegations of Paragraphs 1 to 38.

RESPONSE:  Sleuwen realleges his responses to Paragraphs 1 through 38 as his response to Paragraph No. 75.

ALLEGATION No. 76:     Pursuant to the EB/OES Agreement, upon termination of the Agreement, Defendants are required to return or destroy EB's Confidential Information.

RESPONSE:   Sleuwen denies the allegations of Paragraph No. 76.

ALLEGATION No. 77:     Defendants have not returned or destroyed the Confidential Information.

RESPONSE: Sleuwen states that OES has returned to EB or destroyed all of the Confidential Information that it has been required to date to return or destroy. Sleuwen denies the remaining allegations of Paragraph No. 77.

ALLEGATION No. 78:    EB has demanded that Defendants return the Confidential Information to EB, but Defendants have refused to comply with EB's request.

RESPONSE: Sleuwen states that Exhibits 3 and 5 speak for themselves and deny allegations inconsistent with them.    Sleuwen denies the remaining allegations of Paragraph No. 78.

ALLEGATION No. 79:    Defendants' refusal to return the Confidential Information to EB constitutes conversion.

RESPONSE:   Sleuwen denies the allegations of Paragraph No. 79.

<div align="center">**COUNT VIII**</div>

ALLEGATION No. 80:    Plaintiff realleges the allegations of Paragraphs 1 to 38.

RESPONSE:   Sleuwen realleges his responses to allegations of Paragraphs 1 through 38 as his response to Paragraph No. 80.

ALLEGATION No. 81:    By reason of the foregoing, a real and justiciable controversy exists between the parties and Plaintiff is entitled to a declaration, pursuant to 28 U.S.C. §2201 that:

a.   EB validly terminated the EB/OES Agreement due to OES' material breaches, including OES' failure to deliver the *Gran Enciclopedia Salvat* and updated content;

b.   EB validly terminated the EB/OES Agreement due to the termination of the Salvat Agreement;

c.   EB is entitled to participate in separate talks with Salvat in order to understand Salvat's position regarding its termination of the Salvat Agreement, and whether, through EB's exercise of the Purchase Option, EB can acquire rights to the Gran Enciclopedia Salvat;

        d.  EB's communications with Salvat do not constitute a breach of contract, tortious interference with contractual relations, tortious interference with prospective economic advantage with Defendants or give rise to any claims, remedies or causes of action by Defendants.

RESPONSE:　Sleuwen denies the allegations of Paragraph No. 81.

## ADDITIONAL DEFENSES

1.　　EB is not entitled to the injunctive relief it requests in Count 1 since OES' website (www.ebrisa.com) no longer uses EB's BRITANNICA trademark and related trade dress or any EB Content in its consumer website, and OES' uses of EB's BRITANNICA mark and its Content in OES' institutional website is expressly authorized by EB in writing.

2.　　EB is estopped from asserting, and has waived its right to assert that OES is infringing, willfully or otherwise, any of EB's marks, trade dress, and copyrights up through the date of this Answer since EB has, in writing, specifically granted OES the right to use its marks, trade dress and copyrights notwithstanding EB's claim that it has terminated the EB/OES Agreement.

        a.   These writings include the March 25, 2008 letter of EB's counsel in this matter (see Exhibit 5 to plaintiff's Complaint) to the president of OES ("EB expects OES to temporarily maintain the Web site and provide services to current subscribers") and the June 4, 2008 letter of EB's counsel in this matter to counsel for OES ("[T]o reaffirm, while [EB] evaluates its purchase option, [EB] is not objecting to OES short term use of [EB's] intellectual property.")

b.      In due reliance upon these statements, OES has not taken steps to date to cleanse its web site of all of EB's marks and copyrighted materials.

c.      EB is therefore barred from seeking any injunctive relief or monetary damages for alleged infringement (or any other causes of action) regarding any mark or other intellectual property that EB has expressly allowed OES to use to date.

3.      By virtue of EB's material breaches of the EB/OES Agreement, EB cannot sue OES for alleged breaches of that same Agreement.  EB's material breaches include the following:

a.      EB recently replaced the Enciclopedia Hispanica database of Editorial Barsa Planeta, Inc., a company with offices in Mexico, D.F. ("Barsa Planeta"), which database EB had been using for several years in its Spanish language online service for institutions (such as colleges and universities) and marketed under the BRITANNICA name with another database.  In doing so, EB failed to "engage in good faith negotiations with OES to expand OES' exclusive territory described in Section 2.1(ii) of the Agreement to include the United States and Canada in advance of EB's cessation of distribution of Spanish language database previously provided to EB by Barsa Planeta.  This breach of the EB/OES Agreement denied OES valuable rights expressly granted to it by that Agreement.

b.      EB repeatedly breached Section 3.1 of the EB/OES Agreement by failing to deliver to OES on a timely basis periodic updates which the EB/OES Agreement expressly requires to cover during any given one-year

b.      In due reliance upon these statements, OES has not taken steps to date to cleanse all of its web sites of all of EB's marks and copyrighted materials.

c.      EB is therefore barred from seeking any injunctive relief or monetary damages for alleged infringement (or any other causes of action) regarding any mark or other intellectual property that EB has expressly allowed OES to use to date.

3.      By virtue of EB's material breaches of the EB/OES Agreement, EB cannot sue OES for alleged breaches of that same Agreement.  EB's material breaches include the following:

a.      EB recently replaced the Enciclopedia Hispanica database of Editorial Barsa Planeta, Inc., a company with offices in Mexico, D.F. ("Barsa Planeta"), which database EB had been using for several years in its Spanish language online service for institutions (such as colleges and universities) and marketed under the BRITANNICA name with another database.  In doing so, EB failed to "engage in good faith negotiations with OES to expand OES' exclusive territory described in Section 2.1(ii) of the Agreement to include the United States and Canada in advance of EB's cessation of distribution of Spanish language database previously provided to EB by Barsa Planeta.  This breach of the EB/OES Agreement denied OES valuable rights expressly granted to it by that Agreement.

b.      EB repeatedly breached Section 3.1 of the EB/OES Agreement by failing to deliver to OES on a timely basis periodic updates which the EB/OES Agreement expressly requires to cover during any given one-year

period during the term of the EB/OES Agreement no less than 5% of all of the articles or entries contained in the content EB provided to OES (defined by the EB/OES Agreement as "Exclusive Works"). This requirement is to insure that the content supplied by EB to OES remained current, and thus marketable, throughout the term of the EB/OES Agreement. OES gave EB written notice of these material breaches on December 18, 2007.

c.     EB repeatedly breached Section 3.7 of the EB/OES Agreement by failing to provide to OES the marketing, promotion, architectural and development services to the extent required by Section 3.7. In addition, what marketing, promotion, architectural and development services EB did provide were not delivered in a prompt or expeditious manner as is required by Section 3.7. EB has failed to provide to OES any such services as required by Section 3.7 for almost one year. These breaches have wrongfully deprived OES of EB's marketing, promotion, architectural and development know-how thus materially damaging OES' efforts to sell its content.

d.     EB has repeatedly breached Section 3.9 of the Agreement by failing "to promote the Consumer Service [as defined in that Agreement] throughout the Term on Britannica.com to the same extent that EB promotes its own non-English Consumer web sites or the non-English websites of its Affiliates." In fact, for months, there have been no references whatsoever to OES Consumer Service on Britannica.com.

4.    The Purchase Option which EB seeks to exercise is governed by Sections 6 and 7 of the EB/OES Agreement.  Under Section 7.3 of that Agreement, the Closing, as defined in that Agreement cannot occur before the sixth anniversary of the Launch Date, as defined by the Agreement.  Since the Launch Date occurred on July 1, 2006, the Closing of the Purchase Option, even if properly exercised, cannot occur until after July 1, 2012.

**WHEREFORE** Sleuwen prays for the entry of a judgment in its favor denying each and every one of plaintiff's claims against him, awarding Sleuwen his reasonable attorneys' fees and costs pursuant to Section 11.1 of the EB/OES Agreement, awarding Sleuwen his costs of, and that EB did in fact engage in some communications with Salvat suit, and awarding Sleuwen such other relief as may be appropriate in the circumstances.

Dated:  June 6, 2008

Respectfully submitted,

MILLER SHAKMAN & BEEM LLP

By:___s/ Eric A. Oesterle_____
Attorneys for Defendant,
**MARKUS SLEUWEN GUERRERO**

Eric A. Oesterle
MILLER SHAKMAN & BEEM LLP
180 North LaSalle Street
Suite 3600
Chicago, IL  60601
(312) 263-3700

## CERTIFICATE OF SERVICE

The undersigned attorney, upon oath, hereby certifies that he served a copy of the

attached **Defendant Markus Sleuwen Guerrero's Answer to Plaintiff's Complaint** upon the

parties via electronic means pursuant to Electronic Case Filing (ECF) procedures, on the **6**[th] day

of **June, 2008.**


_____s/ Eric A. Oesterle_____


Eric A. Oesterle (ARDC #2092433)
MILLER SHAKMAN & BEEM LLP
180 North LaSalle Street
Suite 3600
Chicago, Illinois  60601
(312) 263-3700