**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ENCYCLOPEDIA BRITANNICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 1:08-cv-02752 |
| | ) | |
| MARKUS SLEUWEN GUERRERO and | ) | Judge Ruben Castillo |
| ONLINE EDUCATION SYSTEMS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**ANSWER OF DEFENDANT ONLINE EDUCATION SYSTEMS, LLC**
**TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM**

**ANSWER**

Defendant Online Education Systems, LLC ("OES") responds to plaintiff's Complaint as follows:

ALLEGATION No. 1:     This is an action to obtain immediate injunctive relief, permanent injunctive relief, declaratory relief, monetary damages and attorneys' fees and costs arising from Defendants' unauthorized use of Plaintiff's marks, copyrighted content and proprietary rights in willful disregard of Plaintiff's rights following termination of a license, as well as to recover for breach of that license and conversion.

RESPONSE:  OES admits that plaintiff's complaint seeks to obtain immediate injunctive relief, permanent injunctive relief, declaratory relief, monetary damages and attorneys' fees and costs purportedly arising from defendants' alleged unauthorized use of marks, copyrighted content and proprietary rights claimed by plaintiff in purported willful disregard of plaintiff's alleged rights following the purported termination of a license, as well as for an alleged breach of that license and a purported conversion.  OES denies that

- 1 -

EB is entitled to any of the relief it seeks or that EB has any valid claims against OES, and denies the remaining allegations of Paragraph No. 1.

ALLEGATION No. 2:     Plaintiff, Encyclopedia Britannica, Inc. ("EB"), is a Delaware corporation, with its principal place of business in Chicago, Illinois.

RESPONSE:  OES admits the allegations of Paragraph No. 2.

ALLEGATION No. 3:     Defendant Markus Sleuwen Guerrero ("Sleuwen"), is President of Defendant, Online Education Systems, LLC ("OES"), and resides in Illinois in this District.

RESPONSE:  OES admits the allegations of Paragraph No. 3.

ALLEGATION No. 4:     Defendant, OES, is a Delaware corporation, with its principal place of business in Chicago, Illinois.

RESPONSE:  OES admits that it is a Delaware limited liability company with its principal place of business in this District.  OES denies the remaining allegations of Paragraph No. 4.

ALLEGATION No. 5:     Sleuwen has directed and controlled the activities of OES complained of in this action.

RESPONSE:  OES admits that Markus Sleuwen Guerrero ("Sleuwen") has been the president of OES since 2007, and denies the remaining allegations of Paragraph No. 5.

ALLEGATION No. 6:     This Court has jurisdiction by virtue of the fact that this is a civil action arising under the Lanham Act (15 U.S.C. §1051 *et seq.*) and the Copyright Act (17 U.S.C. §101 *et seq.*), jurisdiction being conferred by 15 U.S.C. §1121 and 28 U.S.C. §1338(a).  This Court has supplemental jurisdiction over all related state and common law claims in accordance with 28 U.S.C. §1338(b) and 28 U.S.C. §1367.

RESPONSE:  OES admits that some of plaintiff's claims arise under the Lanham and Copyright Acts, and that this Court has jurisdiction to hear this case under 15 U.S.C. §1121 and 28 U.S.C. §1338(a).  OES further admits that the state and common law

claims made by plaintiff in this case are "related" to the claims that are at issue in plaintiff's Lanham or Copyright Act claims against it, and thus admits that, under 28 U.S.C. §1138(b) and 28 U.S.C. §1367, this Court has supplemental jurisdiction over all of those related state and common law claims as long as plaintiff's Lanham and Copyright Act claims are pending.  OES denies the remaining allegations of Paragraph No. 6.

ALLEGATION No. 7:        OES has consented to jurisdiction and venue in this Court.

RESPONSE:  OES admits that it consented to the jurisdiction of state and federal courts located in Cook County, Illinois and denies the remaining allegations of Paragraph No. 7.

ALLEGATION No. 8:        EB is the nation's leading provider of encyclopedic and other reference works and content in print and electronic form.  EB enjoys an unmatched reputation for reliable and authoritative publications.

RESPONSE:  OES admits that EB is a well known provider of encyclopedic and other reference works and content in print and electronic form in the United States, and that EB has a reputation regarding the reliability and authoritativeness of its publications.  OES denies the remaining allegations of Paragraph No. 8.

ALLEGATION No. 9:        EB markets its content and works in many languages, including Spanish.  EB's content and works are provided via various websites on a subscription basis to consumers and a variety of institutions, including schools and libraries.

RESPONSE:  OES admits that some of EB's content and works are provided via various websites on a subscription basis to consumers and a variety of institutions, including schools and libraries but states that some of EB's content and works are provided for free to consumers on EB's consumer website.  OES admits the remaining allegations of Paragraph No. 9.

ALLEGATION No. 10:    Since long prior to any date upon which OES commenced engaging in the complained of wrongful conduct, EB has continuously used in commerce the marks BRITANNICA, EB, and a distinctive trade dress to identify information services and encyclopedic content

.

RESPONSE:   OES is without knowledge or information sufficient to form a belief about the truth of the allegations regarding EB's alleged trade dress.  OES admits the remaining allegations of Paragraph No. 10.

ALLEGATION No. 11:    EB owns federal registrations for its BRITANNICA and EB marks, including the following:

| BRITANNICA BOOK OF THE YEAR | 825,337 | Reference volumes published annually devoted to current events |
|---|---|---|
| BRITANNICA | 1,309,991 | Reference works in particular, junior encyclopedias and atlases |
| BRITANNICA | 1,506,869 | Educational materials for adults and children, namely encyclopedias, dictionaries, atlases, reference books, booklets, charts, posters, manuals and pamphlets; Cinematographic motion picture films, slides, filmstrips, audio and video cassettes and computer programs; retail outlet distributorship, mail order services in the fields of education management and businesses |
| BRITANNICA ONLINE | 1,918,562 | Computer services, namely providing access to computer databases of information in the field of encyclopedias, yearbooks, and dictionaries |
| BRITANNICA | 2,287,468 | Computer services, namely providing access to computer database of information dealing with educational reference materials for adults and children in the field of encyclopedias, yearbooks, and dictionaries |
| BRITANNICA.COM | 2,550,643 | Promotion of goods and services of others by placing advertisements and promotional displays in an electronic online website accessed through global computer network; |

|  |  | providing electronic mail; providing search engines for obtaining data on a global computer network including organizing, creating indices and displaying directories of information, websites and other resources |
| --- | --- | --- |
| EB | 2,217,453 | Computer services, namely providing access to computer databases of information in the field of encyclopedias, yearbooks and dictionaries |

RESPONSE:  OES lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 11.

ALLEGATION No. 12:    These registrations constitute *prima facie* evidence of the validity of the registered mark, of EB's ownership of the mark, and of EB's exclusive right to use the mark on or in connection with the goods or services specified in the registration.  15 U.S.C. §1115.

RESPONSE:  OES admits that 15 U.S.C. § 1115 provides in part that "a mark registered on the principal register provided by this chapter and owned by a party to an action shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified  in the registration subject to any conditions or limitations stated therein. . . ."  OES lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph No. 12.

ALLEGATION No. 13:    EB has expended substantial resources to advertise and promote its BRITANNICA and EB marks and related trade dress, including the famous Thistle design, and has offered many millions of dollars worth of services and sold hundreds of millions of dollars worth of products under and

in connection with its BRITANNICA and EB marks, and related trade dress.

RESPONSE:  OES lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the worth of services offered or products sold by plaintiff under and in connection with plaintiff's marks and trade dress; and about whether EB's Thistle design is famous.  OES admits the remaining allegations of Paragraph No. 13.

ALLEGATION No. 14:    By virtue of EB's long use, widespread advertising and enormous sales, the BRITANNICA and EB marks and related trade dress have become well-known as symbols of EB's products and services, and the products and services of those authorized by EB to use its BRITANNICA and EB marks and trade dress, and therefore has come to represent goodwill of great value which is owned by EB.

RESPONSE:  OES admits that the BRITANNICA mark is well-known.  OES lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding the length of use, the amount of advertising or the amount of the sales by EB using its BRITANNICA and EB marks, and lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding EB's alleged trade dress or goodwill.  OES lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph No. 14.

ALLEGATION No. 15:    EB's encyclopedic and other reference works are original to EB and constitute copyrightable subject matter.

RESPONSE:  OES lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 15.

ALLEGATION No. 16:    EB has complied with in all respects with the provisions of the Copyright Laws of the United States, 17 U.S.C. §101 *et seq.*, has secured the exclusive rights and privileges in its encyclopedic and other reference works, and has received

Certificates of Registration from the Register of Copyright for its encyclopedic and other reference works, including the following registrations:

|     | Title | Registration No. |
| --- | --- | --- |
| 1. | New Encyclopedia Britannica | TX0004463702 |
| 2. | New Encyclopedia Britannica | TX0003053801 |
| 3. | New Encyclopedia Britannica | TX0002787808 |
| 4. | New Encyclopedia Britannica | TX0002577200 |
| 5. | New Encyclopedia Britannica | TX0002278849 |
| 6. | New Encyclopedia Britannica | TX0002002032 |
| 7. | New Encyclopedia Britannica | TX0002002031 |
| 8. | New Encyclopedia Britannica | TX0001540751 |
| 9. | Enciclopedia Compacta Britannica | TX6542056 |
| 10. | Britannica & 10 other titles; audiovisual works | V1853P257 |
| 11. | Britannica atlas | TX0003826336 |

RESPONSE:  OES lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 16.

ALLEGATION No. 17:    EB is the sole proprietor of all rights, title and interest in its encyclopedic and other reference works.

RESPONSE:  OES lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 17.

ALLEGATION No. 18:    In 2005, Defendants approached EB to obtain a license to offer online services (the "Services") utilizing EB's BRITANNICA mark and certain copyrighted Spanish language reference works of EB in combination with Spanish language reference works which Defendants were negotiating to obtain a license to use from Editorial Salvat S. L. ("Salvat").

RESPONSE:  OES admits that it approached EB to obtain a license to offer online services utilizing EB's BRITANNICA mark and certain copyrighted Spanish language reference works of EB in combination with Spanish language reference works which OES was negotiating to obtain a license to use from Editorial Salvat S.L. ("Salvat"). OES denies the allegations of Paragraph No. 18.

ALLEGATION No. 19:     On July 7, 2005, OES entered into a license agreement with Salvat (the "Salvat Agreement"). Because that agreement is confidential, it will be filed under seal pursuant to motion in connection with EB's motion for injunctive relief. In the Salvat Agreement, OES acquired a restricted right to use Salvat's content in connection with the Services marketed under the name of Salvat and Encyclopedia Britannica.

RESPONSE:  OES lacks knowledge or information sufficient to form a belief about the truth of the allegation regarding when OES will file the EB/OES Agreement with the Court under seal. OES admits that OES and Salvat entered into an Agreement, but states that this Agreement speaks for itself and denies any allegations inconsistent with it. OES admits the remaining allegations of Paragraph No. 19.

ALLEGATION No. 20:     The Salvat Agreement contemplated the consummation of the EB/OES Agreement (the "EB/OES Agreement" or "Agreement") which was concluded effective as of October 4, 2005 after much negotiation.

RESPONSE:  OES admits the allegations of Paragraph No. 20.

ALLEGATION No. 21:     In turn, the EB/OES Agreement provides that OES would launch the Services in 2006 on the foundation of the substantial text and multimedia database of the *Gran Enciclopedia Salvat*, along with Salvat's ongoing editorial involvement and delivery of updated content. The EB/OES Agreement limited OES' right to use EB's copyrighted content and intellectual property only as part of online services bundled with Salvat content. OES is obligated to pay EB royalties and marketing fees as part of the Agreement. The EB/OES Agreement is confidential and will be filed under seal pursuant to motion in connection with EB's motion for injunctive relief.

RESPONSE:  OES states that the EB/OES Agreement speaks for itself and denies any allegations inconsistent with its terms. OES admits that the EB/OES Agreement is confidential. OES lacks knowledge or information sufficient to form a belief about the truth of the allegation regarding when EB will file the EB/OES Agreement with the Court

under seal.  OES denies that EB is entitled to any injunctive relief.  OES denies the

remaining allegations of Paragraph No. 21.

ALLEGATION No. 22:    In connection with the EB/OES Agreement, EB
collaborated with OES in developing a Website at
http://www.ebrisa.com, that contains intellectual property
of EB.  The URL is a combination of EB's EB trademark
and SA for Salvat.

RESPONSE:  OES denies the last sentence of Paragraph No. 22.  Answering further,

OES states that its URL is the combination of "E" for electronic and "brisa" which is

Spanish for breeze.  OES denies the remaining allegations of Paragraph No. 22.

ALLEGATION No. 23:    The Website at http://www.ebrisa.com uses EB's [sic]
prominently display's [sic] EB's BRITANNICA mark and
distinctive trade dress, including the Thistle design, on its
homepage.  A copy of the www.ebrisa.com homepage is
attached as Exhibit 1.

RESPONSE:  OES admits that the copy of the www.ebrisa.com homepage attached to

plaintiff's complaint as Exhibit 1 depicts that homepage as of May 9, 2008, but not the

current homepage.  OES denies the remaining allegations of Paragraph No. 23.

ALLEGATION No. 24:    Pursuant to the EB/OES Agreement, Defendants launched
the Services at http://ebrisa.com utilizing EB's
BRITANNICA mark and certain Spanish language
reference works of EB in mid-2006, but failed to deliver
the *Gran Enciclopedia Salvat* and the updated content as
required by the EB/OES Agreement.

RESPONSE:  OES admits that, pursuant to the EB/OES Agreement, OES launched the

Services at http://ebrisa.com utilizing EB's BRITANNICA mark and certain Spanish

reference works of EB in mid-2006.  OES denies that the delivery of the *Gran

Enciclopedia Salvat* was required by the EB/OES Agreement to occur in mid-2006.  OES

denies that it has failed to provide any updated content.  OES denies the remaining

allegations of Paragraph No. 24.

ALLEGATION No. 25:    The delivery of the *Gran Enciclopedia Salvat* and Salvat's ongoing editorial involvement in maintaining the quality of the Services, pursuant to the EB/OES Agreement, was the essence of the Agreement. Indeed, the EB/OES Agreement provides that EB may terminate the Agreement, [sic] at any time following termination of the Salvat Agreement.

RESPONSE:  OES states that the EB/OES Agreement speaks for itself and denies any allegations inconsistent with it.

ALLEGATION No. 26:    Despite EB's repeated demands that OES comply with its obligations under the EB/OES Agreement, OES has failed to deliver the required content in clear breach of the Agreement. Moreover, this failure meant that the Services were not being maintained in accordance with Britannica Standards referred to in the EB/OES Agreement.

RESPONSE:  OES admits that Editorial Salvat S. L. ("Salvat") has failed to deliver to OES the *Gran Enciclopedia Salvat*. OES denies the remaining allegations of Paragraph No. 26.

ALLEGATION No. 27:    Indeed, by Sleuwen's own admissions, OES' failure to provide this updated content has caused much damage to EB.

RESPONSE:  OES denies the allegations of Paragraph No. 27.

ALLEGATION No. 28:    On November 28, 2007, EB sent Defendants written notice, pursuant to the EB/OES Agreement, that OES is in material breach of the EB/OES Agreement due to its failure to maintain the Services in accordance with Britannica Standards and specifically, its failure to provide the updated content. Attached as Exhibit 2 is a copy of the letter dated November 28, 2007, sent by EB to Defendants. Exhibit 2 constitutes notice of breach under the terms of the EB/OES Agreement. Pursuant to the EB/OES Agreement, EB provided OES a 30-day grace period to cure this deficiency.

RESPONSE:  OES admits that on or shortly after November 28, 2007 it received from EB the letter, a copy of which is attached to plaintiff's Complaint as Exhibit 2. OES

states that this letter speaks for itself and denies any allegations inconsistent with it.  OES

denies that this letter constitutes a proper notice of breach under the terms of the EB/OES

Agreement.  Section 4.1 of the EB/OES Agreement provides a specific procedure that EB

must follow in the event that it contends that any Content made available on the Services

does not comply with "Britannica Standards" as defined by the EB/OES Agreement.  EB

did not follow those procedures and thus its November 28, 2007 notice was invalid and of

no effect.  OES denies the remaining allegations of Paragraph No. 28.

ALLEGATION No. 29:    Defendants did not contest or dispute that the delivery of
                      the updated content was owed, rather they repeatedly
                      represented that the content was forthcoming.

RESPONSE:   OES denies the allegations of Paragraph No. 29.

ALLEGATION No. 30:    Reasonably relying on these representations and promises,
                      EB delayed in filing a lawsuit and agreed to a mutual
                      moratorium, suspending any actions until March 31, 2008
                      and providing, amount other things, that OES would
                      comply with its editorial duties by March 31, 2008.
                      Attached as Exhibit 3 is a copy of the mutual moratorium
                      agreement dated December 26, 2007.

RESPONSE:   OES lacks knowledge or information sufficient to form a belief about the

truth of the allegation about what, if anything, EB relied upon.  OES admits that Exhibit 3

of plaintiff's complaint is a copy of letter dated December 26, 2007 from EB to OES and

that Sleuwen signed the second page of that letter on or shortly after December 26, 2007.

OES states that this letter speaks for itself and denies any allegations inconsistent with it.

OES denies the remaining allegations of Paragraph No. 30.

ALLEGATION No. 31:    Thereafter, EB learned, by Sleuwen's own admission, that
                      OES' failure to deliver the *Gran Enciclopedia Salvat* and
                      updated content was due to Salvat's termination of the
                      Salvat Agreement.

RESPONSE: OES admits that Sleuwen advised EB that Salvat purported to have terminated the Salvat but states that such communication occurred on October 4, 2007, well before the OES and EB agreed to a temporary moratorium. OES further advised EB that OES was contesting Salvat's purported termination. OES denies the remaining allegations of Paragraph No. 31.

ALLEGATION No. 32:     Accordingly, EB requested permission from OES to negotiate with Salvat directly regarding the availability and currency of the Gran Enciclopedia Salvat, but Defendants' imposed unreasonable and oppressive conditions on separate talks between EB and Salvat. Attached as Exhibit 4 is a copy of the letter dated March 11, 2008, sent by Defendants to EB regarding its request to engage in separate talks with Salvat.

RESPONSE: OES admits that EB requested permission from OES to engage in discussion with Salvat allegedly to assist OES in the resolution of its dispute with Salvat, and that EB did in fact engage in some communications with Salvat. OES admits that Exhibit 4 of plaintiff's complaint is a copy of OES' March 11, 2008 letter to EB. OES denies the remaining allegations of Paragraph No. 32.

ALLEGATION No. 33:     The moratorium ended without OES having complied with its obligations thereunder and OES remaining in breach of the EB/OES Agreement. Moreover, it became clear to EB that because of the termination of the Salvat Agreement, OES would be unable to provide EB with the Gran Enciclopedia Salvat, the essence of the EB/OES Agreement as originally contemplated. Thus, the EB/OES Agreement was effectively rendered null and void.

RESPONSE:  OES lacks knowledge or information sufficient to form a belief about the truth of the allegation of what "became clear to EB." OES admits that the moratorium ended. OES denies the remaining allegations of Paragraph No. 33.

ALLEGATION No. 34:     In light of OES' inability and failure to provide EB with the Gran Enciclopedia Salvat and updated content, EB sent

Defendants notice on March 27, 2008, that it was
terminating the EB/OES Agreement effective March 31,
2008. Attached as Exhibit 5 is a copy of the letter dated
March 25, 2008, sent by EB to defendants. Exhibit 5
constitutes notice of termination under the EB/OES
Agreement.

RESPONSE: OES admits that Exhibit 5 of plaintiff's complaint is a copy of a March 25,

2008 letter that OES received from EB on or shortly after April 9, 2008. OES states that

this letter speaks for itself and denies any allegations inconsistent with it. OES denies

that this March 25, 2008 letter constitutes notice of termination under the terms of the

EB/OES Agreement. OES denies the remaining allegations of Paragraph No. 34.

ALLEGATION No. 35:       Pursuant to the EB/OES Agreement, OES had certain
obligations upon termination including removing the
licensed intellectual property from the Services, purging
any and all portions of the licensed intellectual property
from system services and hard disk drives in its possession
or under its control, and returning or destroying all of EB's
confidential and proprietary information and materials
("Confidential Information"). The EB/OES Agreement
further provided EB with a purchase option upon
termination, which grants EB the option to purchase the
intangible assets owned by OES that are used in connection
with the Services.

RESPONSE: OES admits that the EB/OES Agreement contains provisions addressing

OES' obligations upon termination of that Agreement and provides EB with an option to

purchase certain of OES' assets pursuant to the terms and conditions of that Agreement.

OES denies the remaining allegations of Paragraph No. 35.

ALLEGATION No. 36:       In EB's termination letter of March 25, 2008 (*see* Exhibit
5), EB notified OES that it was exercising its purchase
option and requested that OES comply with its termination
obligations and provided OES' financial information in
connection with the purchase option. EB also informed
OES that it will need to confer with Salvat in order to
determine the value of the assets that EB will be
purchasing.

- 13 -

RESPONSE: OES denies the allegation that Exhibit 5 to plaintiff's complaint constitutes a "termination letter" under the EB/OES Agreement. OES states that Exhibit 5 speaks for itself and denies any allegations inconsistent with it. OES denies the remaining allegations of Paragraph No. 36.

ALLEGATION No. 37:    Rather than comply with its termination obligations under the EB/OES Agreement, OES, through its attorneys' [sic], threatened EB with a lawsuit alleging breach of contract, tortious interference with contractual relations, and tortious interference with prospective economic advantage. A copy of the letter dated April 9, 2008, from OES' attorneys is attached as Exhibit 6.

RESPONSE: OES admits that Exhibit 6 is a copy of a letter dated April 9, 2008 sent by OES' counsel to EB's counsel on April 9, 2008. OES states that this letter speaks for itself and denies any allegations inconsistent with it. OES denies the remaining allegations of Paragraph No. 37.

ALLEGATION No. 38:    On May 1, 2008, notwithstanding termination of the EB/OES Agreement and EB's ownership of the EB mark, OES filed an application with the United States Patent and Trademark Office for registration of the EBRISA mark (Serial NO. 77462642) for use in connection with "providing an online publication in the nature of an interactive encyclopedia in the field of Spanish language; providing online non-downloadable electronic dictionaries."

RESPONSE: OES admits that, on May 1, 2008, it filed an application with the United States Patent and Trademark Office for registration of the EBRISA mark (Serial NO. 77462642) for use in connection with "providing an online publication in the nature of an interactive encyclopedia in the field of Spanish language; providing online non-downloadable electronic dictionaries." OES denies the remaining allegations of Paragraph No. 38.

## COUNT I

ALLEGATION No. 39:  Plaintiff realleges the allegations of paragraphs 1 to 38.

RESPONSE:  OES realleges its responses to paragraphs 1 through 38 as its response to

Paragraph No. 39.

ALLEGATION No. 40:  Under the EB/OES Agreement, Defendants were authorized by EB to utilize EB's intellectual property in connection with the Services.

RESPONSE:  OES states that the EB/OES Agreement speaks for itself and denies any

allegations inconsistent with it.

ALLEGATION No. 41:  Upon termination of the EB/OES Agreement, Defendants were no longer authorized to use EB's BRITANNICA and EB trademarks and related trade dress.

RESPONSE:  OES denies the allegations of Paragraph No. 41.

ALLEGATION No. 42:  Despite the termination of the EB/OES Agreement, Defendants continue to offer services in competition with EB at http://www.ebrisa utilizing EB's BRITANNICA trademark and related trade dress, various confidential and proprietary information of EB, and copyrighted works of EB.

RESPONSE:  OES denies that the EB/OES Agreement has been terminated, denies that

OES offers services in competition with EB and denies that OES continues "to utilize

EB's BRITANNICA trademark and related trade dress" other than in accordance with the

EB/OES Agreement or with EB's express written communications to OES.  OES denies

the remaining allegations of Paragraph No. 42.

ALLEGATION No. 43:  OES has acknowledged the validity and EB's ownership of the BRITANNICA mark, and the right of EB to intellectual property provided by EB in connection with collaboration under the EB/OES Agreement.

RESPONSE:  OES states that the EB/OES Agreement speaks for itself and denies any

allegations inconsistent with it.

ALLEGATION No. 44:    Defendants have continued to use the BRITANNICA and EB marks, related trade dress and other intellectual property of EB with full knowledge of, and in willful disregard of EB's rights, and with the intent to obtain a commercial advantage that Defendants otherwise would not have.

RESPONSE:  OES denies the allegations of Paragraph No. 44.

ALLEGATION No. 45:    Defendants' acts are likely to cause confusion, mistake or deception with EB's registered marks.

RESPONSE:  OES denies the allegations of Paragraph No. 45.

ALLEGATION No. 46:    Defendants' acts constitute trademark counterfeiting in violation of the Trademark Law of the United States, 15 U.S.C. §1114.

RESPONSE:  OES denies the allegations of Paragraph No. 46.

ALLEGATION No. 47:    Defendants' acts constitute willful trademark infringement in violation of 15 U.S.C. §1114.

RESPONSE:  OES denies the allegations of Paragraph No. 47.

ALLEGATION No. 48:    OES has acknowledged in the EB/OES Agreement that there is no adequate remedy at law for breach of the Agreement and that such conduct would result in irreparable harm.  As such, OES has agreed that EB is entitled to specific performance and injunctive relief without the posting of a bond or other security in the event of a breach.

RESPONSE:  OES states that the EB/OES Agreement speaks for itself and denies any

allegations inconsistent with it.  Sleuwen denies the remaining allegations of Paragraph

No. 48.

ALLEGATION No. 49:    EB will continue to suffer irreparable injury if Defendants are not enjoined or specific performance is not ordered.

RESPONSE:  OES denies the allegations of Paragraph No. 49.

## COUNT II

ALLEGATION No. 50:        Plaintiff realleges the allegations of Paragraphs 1 to 38.

RESPONSE:  OES realleges its responses to Paragraphs 1 through 38 as its response to

Paragraph No. 50.

ALLEGATION No. 51:        Defendants' willful acts are likely to cause confusion or mistake, or to deceive as to Defendants' affiliation, connection, or association with EB, or as to the origin, sponsorship, or approval of Defendants' services.

RESPONSE:  OES denies the allegations of Paragraph No. 51.

ALLEGATION No. 52:        Defendants are engaged in unfair competition with EB, including passing off, in violation of 15 U.S.C. §1125(a), which if not enjoined will continue to cause irreparable injury to Plaintiff.

RESPONSE:  OES denies the allegations of Paragraph No. 52.

ALLEGATION No. 53:        Defendants' acts constitute unjust enrichment and unfair competition under the common law of the various states, including the state of Illinois.

RESPONSE:  OES denies the allegations of Paragraph No. 53.

## COUNT III

ALLEGATION No. 54:        Plaintiff realleges the allegations of Paragraphs 1 to 38.

RESPONSE:  OES realleges its responses to Paragraphs 1 through 38 as its response to

Paragraph No. 54.

ALLEGATION No. 55:        Defendants' conduct constitutes deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 IL. Comp. Stat. Ann. 510/1 *et seq.*, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 IL. Comp. Stat. Ann. 505/12 *et seq.* and the common law of the State of Illinois, which if not enjoined will continue to cause irreparable injury to EB.

RESPONSE:   OES denies the allegations of Paragraph No. 55.

## COUNT IV

ALLEGATION No. 56:        Plaintiff realleges the allegations of Paragraphs 1 to 38.

RESPONSE:   OES realleges its responses to Paragraphs 1 through 38 as its response to

Paragraph No. 56.

ALLEGATION No. 57:        Under   the   EB/OES   Agreement,   Defendants   were
                          authorized by EB to use the domain name ebrisa.com.

RESPONSE:   OES denies the allegations of Paragraph No. 57.

ALLEGATION No. 58:        Upon termination of the EB/OES Agreement, Defendants
                          no longer were authorized to use the domain name
                          ebrisa.com.

RESPONSE:   OES denies the allegations of Paragraph No. 58.

ALLEGATION No. 59:        Despite the termination of the EB/OES Agreement,
                          Defendants, with a bad faith intent, to profit from EB's
                          famous EB mark, continue to use the domain name
                          ebrisa.com.

RESPONSE:   OES admits that it is using the domain name ebrisa.com.  OES denies the

remaining allegations of Paragraph No. 59.

ALLEGATION No. 60:        Defendants' aforesaid acts constitute cybersquatting in
                          violation of the Anticybersquatting Consumer Protection
                          Act, 15 U.S.C. §1125(d).

RESPONSE:   OES denies the allegations of Paragraph No. 60.

## COUNT V

ALLEGATION No. 61:        Plaintiff realleges the allegations of Paragraphs 1 to 38.

RESPONSE:   OES realleges its responses to Paragraphs 1 through 38 as its response to

Paragraph No. 61.

ALLEGATION No. 62:     Under the EB/OES Agreement, Defendants were authorized by EB to utilize EB's copyrighted works in connection with the Services.

RESPONSE:  OES states that the EB/OES Agreement speaks for itself and denies any allegations inconsistent with it.  OES admits the remaining allegations of Paragraph No. 62.

ALLEGATION No. 63:     Upon termination of the EB/OES Agreement, Defendants no longer were authorized to use EB's copyrighted encyclopedic works in connection with the Services.

RESPONSE:  OES denies the allegations of Paragraph No. 63.

ALLEGATION No. 64:     Defendants continue to reproduce, distribute, and prepare derivative works based upon EB's copyrighted encyclopedic and other reference works.

RESPONSE:  OES admits that it continues to use EB's marks and content in OES' institutional website pursuant EB's express written authorization.  Sleuwen denies the remaining allegations of Paragraph No. 64denies the allegations of Paragraph No. 64.

ALLEGATION No. 65:     Defendants have acknowledged the validity and EB's ownership of the copyrighted encyclopedic and other reference works, and the right of EB to the intellectual property provided by EB in connection with collaboration under the EB/OES Agreement.

RESPONSE:  OES states that the EB/OES Agreement speaks for itself and denies any allegations inconsistent with it.

ALLEGATION No. 66:     Defendants' acts constitute willful copyright infringement of EB's copyrighted encyclopedic and other reference works under 17 U.S.C. §501.

RESPONSE:  OES denies the allegations of Paragraph No. 66.

ALLEGATION No. 67:     Defendants acts are without EB's authorization or consent.

RESPONSE:  OES denies the allegations of Paragraph No. 67.

## COUNT VI

ALLEGATION No. 68:    Plaintiff realleges the allegations of Paragraphs 1 to 38.

RESPONSE:  OES realleges its responses to Paragraphs 1 through 38 as its response to

Paragraph No. 68.

ALLEGATION No. 69:    EB has performed all of its obligations and conditions
precedent under the EB/OES Agreement.

RESPONSE:  OES denies the allegations of Paragraph No. 69.

ALLEGATION No. 70:    EB has notified OES that it materially failed to perform its
obligations under the EB/OES Agreement provided OES
ample opportunity to cure its breaches.

RESPONSE:  OES states that Exhibits 3 and 5 speak for themselves and denies any

allegations inconsistent with them.  OES denies the remaining allegations of Paragraph

No. 70.

ALLEGATION No. 71:    OES has breached, and continues to breach, the EB/OES
Agreement, which breach has caused irreparable harm to
EB.  Among other breaches, OES has failed to pay royalties
and marketing fees of at least $24,500.

RESPONSE:  OES denies the allegations of Paragraph No. 71.

ALLEGATION No. 72:    Pursuant to the EB/OES Agreement, within thirty days
after the close of each Calendar Quarter, OES is obligated
to provide EB with an accounting of its gross revenues, but
OES has not complied with this obligation.  Accordingly,
EB does not have access to the records and information
necessary to ascertain the precise amount of monies that
were paid to or received by Defendants, and as such, the
precise amount of additional unpaid royalties and
marketing fees.

RESPONSE:  OES states that the EB/OES Agreement speaks for itself and denies any

allegations inconsistent with it.  OES denies the remaining allegations of Paragraph No.

72.

ALLEGATION No. 73:     Upon termination of the EB/OES Agreement, EB is entitled to exercise a purchase option and to require EOS [sic] to cease all use of and return to EB all intellectual property of EB.  OES has not complied with its obligations upon termination.

RESPONSE:  OES states that the EB/OES Agreement speaks for itself and denies any allegations inconsistent with it.  OES denies the remaining allegations of Paragraph No. 73.

ALLEGATION No. 74:     Without specific performance of the termination provisions of the EB/OES Agreement, EB will continue to suffer irreparable harm, as acknowledged by OES.

RESPONSE:  OES states that the EB/OES Agreement speaks for itself and denies any allegations inconsistent with it.  OES denies the remaining allegations of Paragraph No. 74.

## COUNT VII

ALLEGATION No. 75:     Plaintiff realleges the allegations of Paragraphs 1 to 38.

RESPONSE:  OES realleges its responses to Paragraphs 1 through 38 as its response to Paragraph No. 75.

ALLEGATION No. 76:     Pursuant to the EB/OES Agreement, upon termination of the Agreement, Defendants are required to return or destroy EB's Confidential Information.

RESPONSE:  OES denies the allegations of Paragraph No. 76.

ALLEGATION No. 77:     Defendants have not returned or destroyed the Confidential Information.

RESPONSE:  OES states that it has returned to EB or destroyed all of the Confidential Information that it has been required to date to return or destroy.  OES denies the remaining allegations of Paragraph No. 77.

ALLEGATION No. 78:    EB has demanded that Defendants return the Confidential Information to EB, but Defendants have refused to comply with EB's request.

RESPONSE:   OES states that Exhibits 3 and 5 speak for themselves and deny allegations inconsistent with them.  OES denies the remaining allegations of Paragraph No. 78.

ALLEGATION No. 79:    Defendants' refusal to return the Confidential Information to EB constitutes conversion.

RESPONSE:   OES denies the allegations of Paragraph No. 79.

**COUNT VIII**

ALLEGATION No. 80:    Plaintiff realleges the allegations of Paragraphs 1 to 38.

RESPONSE:   OES realleges its responses to allegations of Paragraphs 1 through 38 as its response to Paragraph No. 80.

ALLEGATION No. 81:    By reason of the foregoing, a real and justiciable controversy exists between the parties and Plaintiff is entitled to a declaration, pursuant to 28 U.S.C. §2201 that:

   a. EB validly terminated the EB/OES Agreement due to OES' material breaches, including OES' failure to deliver the *Gran Enciclopedia Salvat* and updated content;

   b. EB validly terminated the EB/OES Agreement due to the termination of the Salvat Agreement;

   c. EB is entitled to participate in separate talks with Salvat in order to understand Salvat's position regarding its termination of the Salvat Agreement, and whether, through EB's exercise of the Purchase Option, EB can acquire rights to the Gran Enciclopedia Salvat;

   d. EB's communications with Salvat do not constitute a breach of contract, tortious interference with contractual relations, tortious interference with prospective economic advantage with Defendants or give rise to any claims, remedies or causes of action by Defendants.

RESPONSE:   OES denies the allegations of Paragraph No. 81.

## ADDITIONAL DEFENSES

1.      EB is not entitled to the injunctive relief it requests in Count 1 since OES' website (www.ebrisa.com) no longer uses EB's BRITANNICA trademark and related trade dress or any EB Content in its consumer website, and OES' uses of EB's BRITANNICA mark and its Content in OES' institutional website is expressly authorized by EB in writing.

2.      EB is estopped from asserting, and has waived its right to assert that OES is infringing, willfully or otherwise, any of EB's marks, trade dress, and copyrights up through the date of this Answer since EB has, in writing, specifically granted OES the right to use its marks, trade dress and copyrights notwithstanding EB's claim that it has terminated the EB/OES Agreement.

a.      These writings include the March 25, 2008 letter of EB's counsel in this matter (see Exhibit 5 to plaintiff's Complaint) to the president of OES ("EB expects OES to temporarily maintain the Web site and provide services to current subscribers") and the June 4, 2008 letter of EB's counsel in this matter to counsel for OES ("[T]o reaffirm, while [EB] evaluates its purchase option, [EB] is not objecting to OES short term use of [EB's] intellectual property.")

b.      In due reliance upon these statements, OES has not taken steps to date to cleanse all of its web sites of all of EB's marks and copyrighted materials.

c.      EB is therefore barred from seeking any injunctive relief or monetary damages for alleged infringement (or any other causes of action)

regarding any mark or other intellectual property that EB has expressly allowed OES to use to date.

3.      By virtue of EB's material breaches of the EB/OES Agreement, EB cannot sue OES for alleged breaches of that same Agreement.  These material breaches include the following:

          a.      EB recently replaced the Enciclopedia Hispanica database of Editorial Barsa Planeta, Inc., a company with offices in of Mexico, D.F. ("Barsa Planeta"), which database EB had been using for several years in its Spanish language online service for institutions (such as colleges and universities) and marketed under the BRITANNICA name with another database.  In doing so, EB failed to "engage in good faith negotiations with OES to expand OES' exclusive territory described in Section 2.1(ii) of the Agreement to include the United States and Canada in advance of EB's cessation of distribution of Spanish language database previously provided to EB by Barsa Planeta.  This breach of the EB/OES Agreement denied OES valuable rights expressly granted to it by that Agreement.

          b.      EB repeatedly breached Section 3.1 of the EB/OES Agreement by failing to deliver to OES on a timely basis the periodic updates expressly required by EB/OES Agreement to cover during any given one-year period during the term of the EB/OES Agreement no less than 5% of all of the articles or entries contained in the content EB provided to OES (defined by the EB/OES Agreement as "Exclusive Works").  This requirement is to insure that the content supplied by EB to OES remained

current, and thus marketable, throughout the term of the EB/OES Agreement. OES gave EB written notice of these material breaches on December 18, 2007.

c.      EB repeatedly breached Section 3.7 of the EB/OES Agreement by failing to provide to OES the marketing, promotion, architectural and development services to the extent required by Section 3.7. In addition, what marketing, promotion, architectural and development services EB did provide were not delivered in a prompt or expeditious manner as is required by Section 3.7. EB has failed to provide to OES any such services as required by Section 3.7 for almost one year. These breaches have wrongfully deprived OES of EB's marketing, promotion, architectural and development know-how thus materially damaging OES' efforts to sell its content.

d.      EB has repeatedly breached Section 3.9 of the Agreement by failing "to promote the Consumer Service [as defined in that Agreement] throughout the Term on Britannica.com to the same extent that EB promotes its own non-English Consumer web sites or the non-English websites of its Affiliates." In fact, for months, there have been no references whatsoever to OES Consumer Service on Britannica.com.

4.      The Purchase Option which EB seeks to exercise is governed by Sections 6 and 7 of the EB/OES Agreement. Under Section 7.3 of that Agreement, the Closing, as defined in that Agreement cannot occur before the sixth anniversary of the Launch Date, as defined by the Agreement. Since the Launch Date occurred on July 1, 2006, the

Closing of the Purchase Option, even if properly exercised, cannot occur until after July 1, 2012.

**WHEREFORE** OES prays for the entry of a judgment in its favor denying each and every one of plaintiff's claims against it, awarding OES its costs of suit, and awarding OES such other relief as may be appropriate in the circumstances.

## COUNTERCLAIM

For its counterclaim against plaintiff and counter-defendant Encyclopedia Britannica, Inc. ("EB"), defendant and counter-plaintiff Online Education Systems, LLC states as follows:

## COUNT I (Breach of Contract)

1.    OES is a Delaware limited liability company with its principal place of business in this District.

2.    EB is a Delaware corporation with its principal place of business in Chicago, Illinois.

3.    The claims stated below arise out of the transactions or occurrences that are the subject matter of EB's Complaint in this matter.

4.    The claims stated below do not require adding another party over whom the Court cannot acquire jurisdiction.

5.    The exceptions stated in Fed. R. Civ. P. Rule 13(a)(2) do not apply to the claims stated below.  Accordingly, under Fed. R. Civ. P Rule 13(a) the claims stated below must be stated as a counterclaim in this proceeding.

6.    EB has consented to jurisdiction and venue in the state and federal courts of Cook County.

7.    On October 4, 2005, OES entered into an Agreement ("EB/OES Agreement") with EB.  That Agreement gave OES the right to use EB's intellectual property as part of online Spanish language web site that OES was creating to market Spanish language encyclopedias and other related reference materials to Spanish speaking consumers and institutions on a world-wide basis.

8.     In exchange for the EB's intellectual property and services as required by the EB/OES Agreement, OES agreed in the EB/OES Agreement to pay royalties and other fees to EB.

9.     In conjunction with the EB/OES Agreement, OES developed a web site at http://www.ebrisa.com.  The word "brisa" in Spanish means breeze.  The mark "'ebrisa" is meant to reflect the ease with which a Spanish speaking customer can research facts on OES's web site and the breeze of knowledge experienced by each such customer when using OES' website for research.

10.     When OES created its ebrisa web site and entered into the EB/OES Agreement, EB had an agreement in place with Editorial Barsa Planeta, Inc., a company with offices in Mexico, D.F., Mexico ("Barsa Planeta"), pursuant to which EB licensed from Barsa Planeta certain Spanish language content generally known as the Enciclopedia Hispanica for EB's exclusive use on EB's online service aimed at institutions such as colleges and universities located in the United States or Canada.  EB marketed this service under its BRITANNICA name.

11.     By virtue of its agreement with Barsa Planeta, the express exclusivity and non-competition obligations to which EB is subject pursuant to Section 2.1 of the EB/OES Agreement were limited in scope to world-wide with respect to consumers, but to world-wide minus the United States and Canada with respect to institutions.

12.     Section 2.1(ii) of the EB/OES Agreement obligated EB to "engage in good faith negotiations with OES to expand the exclusive territory described in Section 2.1((ii) to" include the United States and Canada if EB ceased to distribute the Barsa Planeta's Enciclopedia Hispanica during the Term of the EB/OES Agreement.

13.    EB ceased to distribute Barsa Planeta's Enciclopedia Hispanica content during the Term of the EB/OES Agreement.

14.    In breach of Section 2.1(ii) of the EB/OES Agreement, EB failed to disclose to OES its decision to cease distribution of Barsa Planeta's Enciclopedia Hispanica and failed to "engage in good faith negotiations with OES to expand the exclusive territory" under the EB/OES Agreement to include the United States and Canada.

15.    Barsa Planeta's Enciclopedia Hispanica content that EB distributed under its own mark was a 2003 version of the Enciclopedia Hispanica.  OES is informed and believes that EB never updated that content.

16.    On the other hand, the encyclopedic content that OES distributed using its own online services was updated more regularly and more recently than the Enciclopedia Hispanica content that EB was using.  Thus, EB had no good faith basis to fail to enter into the negotiations required by Section 2.1(ii) of the EB/OES Agreement.

17.    EB's breach denied OES the opportunity to cause the exclusivity and non-competition obligations to which EB is subject under Section 2.1 of the EB/OES Agreement to be expanded to include the United States and Canada and to require EB to work with OES on a world-wide basis including the United States and Canada.

18.    The United States has a large number of Spanish speaking residents.  OES is informed and believes that EB receives substantial revenues from its operation of its Spanish language institutional service in the United States.

19.    By breaching Section 2.1(ii) of the EB/OES Agreement, EB has effectively denied the transfer of EB's consumers under its Spanish language institutional

portal to the institutional portal of OES, thus dramatically reducing OES' ability to generate sales to those Spanish speaking residents.

20.     Reference materials, like those EB licensed to OES under the EB/OES Agreement, must be updated regularly and kept current.

21.     Section 3.1 of the EB/OES Agreement requires that EB provide updates to OES of the content that EB licenses to OES under that Agreement.  For example, Section 3.1 requires that EB provide updates to OES at least once every six months and that EB update at least 5% of the "text of its articles or entries contained in the encyclopedic reference works comprised in the Exclusive Works."

22.     In breach of Section 3.1 of the EB/OES Agreement, EB has failed to provide OES with the updates required by Section 3.1.

22.     EB's breach of Section 3.1 has forced OES to make costly alternative arrangements for such updates.

23.     Another key feature of the EB/OES Agreement is EB's agreement to provide marketing, promotion, architectural and development services as required by Section 3.7 of the Agreement.

24.     In breach of Section 3.7 of the EB/OES Agreement, EB has failed to provide prompt and expeditious marketing, promotion, architectural and development services.  In fact, since September of 2007, EB has refused to provide OES with any marketing, promotional, architectural and development services.

25.     These material breaches have deprived OES of EB's marketing, promotional, architectural and development assistance.

26.    Section 3.9 of the Agreement obligated EB to "promote [OES'] Consumer Service throughout the Term [of the OES/EB Agreement] on Britannica.com to the same extent that EB promotes its own non-English Consumer web sites or the non-English Consumer web sites of its Affiliates."

27.    Doing so would give quick and easy access by a potential customer to OES's Content through Britannica's web portal.

28.    In breach of EB's obligations under Section 3.9 of the EB/OES Agreement, EB has failed to provide a link on its web site to OES' web site.

29.    This material breach has denied OES access to Spanish speaking customers who visit EB's web site.

30.    EB's breaches of the EB/OES Agreement have caused OES to suffer substantial damages in excess of $100,000 arising from those breaches.

31.    OES is in full compliance with its obligations under the EB/OES Agreement except only in those cases in which its performance has been excused by EB or by EB's own breaches of the EB/OES Agreement.

32.    Pursuant to Section 11.1 of the EB/OES Agreement, EB is liable for OES' reasonable attorneys' fees and costs resulting from EB's breach of the EB/OES Agreement.

**WHEREFORE**, OES prays for the entry of a judgment against EB in an amount not less than $100,000 to be determined at trial, for an award of OES' reasonable attorneys' fees and costs in connection with this suit, for an award of OES' costs of suit, and for such other relief as may be appropriate in the circumstances.

## COUNT II – Declaratory Relief

1.     OES realleges paragraphs 1 through 9 of Count I of its Counterclaim as paragraph 1 of Count II of its Counterclaim.

2.     As EB has pled in its complaint in this case, EB has attempted to terminate the EB/OES's Agreement and to exercise its Purchase Option under Section 7 of that Agreement.  OES contests the validity of that attempted termination.

3.     Under Sections 6.6 and 7 of the EB/OES Agreement, EB has a right, subject to the occurrence of certain express conditions, to purchase certain of OES' assets for a price to be determined using OES' EBITDA.

4.     Under the Section 7.3 of EB/OES Agreement, such a purchase can be closed, at the earliest, on the sixth anniversary of the Launch Date as defined by the Agreement.

5.     The Launch Date under the EB/OES Agreement was July 1, 2006.  That means that, under EB/OES Agreement, EB's exercise of its Purchase Option cannot close until July 1, 2012.

6.     Section 6.6 allows EB to exercise (but not close) its Purchase Option before the sixth anniversary date of the Launch Date; and that exception applies only in the event that EB terminates the EB/OES Agreement for cause.

7.     Even if EB were to properly exercise its right to terminate the EB/OES Agreement for cause, and to exercise its Purchase Option under that Agreement at the time of that termination, Section 7.3 of the Agreement would still govern such an exercise of EB's Purchase Option.  Thus, EB, even in such a scenario, cannot close its exercise of its Purchase Option until July 1, 2012 at the earliest.

8.    Notwithstanding the plain language of Section 7.3 of the EB/OES Agreement, EB now contends that, if it exercises the Purchase Option as a result of its purported termination of the EB/OES Agreement for cause, EB may close its exercise of its Purchase Option now rather than on or after July 1, 2012.  OES disputes EB's erroneous interpretation of the EB/OES Agreement.

9.    By reason of this dispute, there is a real and justiciable controversy existing between the parties, and OES is entitled to a declaration by this Court, pursuant to 28 U.S.C. § 2201, that any Closing of the Purchase Option under Section 7 of the EB/OES Agreement cannot occur before July 1, 2012 regardless of whether EB seeks to exercise that Purchase Option in connection with its purported termination of the EB/OES Agreement for cause.

**WHEREFORE**, OES prays for the entry of an order declaring that any Closing of the Purchase Option under Section 7 of the EB/OES Agreement cannot occur before July 1, 2012 regardless of whether EB seeks to exercise that Purchase Option in connection with a purported termination of the EB/OES Agreement for cause; and granting OES such other relief as may be appropriate in the circumstances.

Respectfully submitted,

MILLER SHAKMAN & BEEM LLP


By:   s/ Eric A. Oesterle
           Attorneys for Defendant,
           **ONLINE EDUCATION SYSTEMS, LLC**

Eric A. Oesterle
MILLER SHAKMAN & BEEM LLP
180 North LaSalle Street
Suite 3600
Chicago, IL  60601
(312) 263-3700

Dated:  June 6, 2008

## CERTIFICATE OF SERVICE

The undersigned attorney, upon oath, hereby certifies that he served a copy of the

attached **Defendant Online Education Systems, LLC's Answer to Plaintiff's Complaint and**

**Counterclaim** upon the parties via electronic means pursuant to Electronic Case Filing (ECF)

procedures, on the **6**[th] day of **June, 2008.**


                              **s/ Eric A. Oesterle**


Eric A. Oesterle (ARDC #2092433)
MILLER SHAKMAN & BEEM LLP
180 North LaSalle Street
Suite 3600
Chicago, Illinois  60601
(312) 263-3700