## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ENCYCLOPAEDIA BRITANNICA, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:08-cv-02752 |
| ) | |
| MARKUS SLEUWEN GUERRERO and ) | Honorable Rueben Castillo |
| ONLINE EDUCATION SYSTEMS, LLC, ) | |
| ) | Magistrate Judge Martin C. Ashman |
| Defendants. ) | |
| ) | |
| ONLINE EDUCATION SYSTEMS, LLC., ) | |
| ) | |
| Counterclaimant, ) | |
| ) | |
| v. ) | |
| ) | |
| ENCYCLOPAEDIA BRITANNICA, INC., ) | |
| ) | |
| Counterdefendant. ) | |

### ENCYCLOPAEDIA BRITANNICA, INC.'S REPLY TO
### ONLINE EDUCATION SYSTEMS, LLC'S COUNTERCLAIM

Encyclopedia Britannica, Inc. ("EB") replies to Online Education Systems, LLC's ("OES") Counterclaim as follows:

### COUNT I

1.   OES is a Delaware limited liability company with its principal place of business in this District.

   **ANSWER**:   EB admits the allegations of paragraph no. 1.

2.   EB is a Delaware corporation with its principal place of business in Chicago, Illinois.

   **ANSWER**:   EB admits the allegations of paragraph no. 2.

3. The claims stated below arise out of the transactions or occurrences that are the subject matter of EB's complaint in this matter.

**ANSWER**: EB admits the allegations of paragraph no. 3.

4. The claims stated below do not require adding another party over whom the Court cannot acquire jurisdiction.

**ANSWER**: EB admits the allegations of paragraph 4, and further answers that because OES had determined that Editorial Salvat S.L. is not a necessary party, OES is precluded from relying on certain defenses, such as a claim that the Salvat Agreement was not properly terminated.

5. The exceptions stated in Fed. R. Civ. P. Rule 13(a)(2) do not apply to the claims stated below. Accordingly, under Fed. R. Civ. P. Rule 13(a) the claims stated must be stated as a counterclaim in this proceeding.

**ANSWER**: EB admits the allegations of paragraph no. 5.

6. EB has consented to jurisdiction and venue in the state and federal courts of Cook County.

**ANSWER**: EB admits that for purposes of the present action it is subject to personal jurisdiction of this Court and that venue is proper in this district. EB otherwise denies the remaining allegations of paragraph no. 6.

7. On October 4, 2005, OES entered into an Agreement ("EB/OES Agreement") with EB. That Agreement gave OES the right to use EB's intellectual property as part of online [sic] Spanish language web site that OES was creating to market Spanish language encyclopedias and other related reference materials to Spanish speaking consumers and institutions on a world-wide basis.

**ANSWER**:     EB admits that OES entered into the EB/OES Agreement with EB and that under the EB/OES Agreement, EB granted OES limited rights to use certain of EB intellectual property in connection with a Spanish language website proposed by OES.  EB denies the remaining allegations in paragraph no. 7 and respectfully refers the Court to the full EB/OES Agreement for a recitation of its terms and conditions.

8.     In exchange for EB's intellectual property and services as required by the EB/OES Agreement, OES agreed in the EB/OES Agreement to pay royalties and other fees to EB.

**ANSWER**:     EB admits that pursuant to the terms of the EB/OES Agreement, EB, among other things, granted OES a limited right to use certain of EB's intellectual property and agreed to perform certain services.  EB admits that pursuant to the terms of the EB/OES Agreement, OES agreed, among other things, to pay royalties and fees to EB.  EB otherwise denies the allegations of paragraph no. 8.

9.     In conjunction with the EB/OES Agreement, OES developed a website at http://www.ebrisa.com.  The word "brisa" in Spanish means breeze.  The mark "ebrisa" is meant to reflect the ease with which a Spanish speaking customer can research facts on OES's web site and the breeze of knowledge experienced by each customer when using OES' website for research.

**ANSWER**: EB admits that in connection with the EB/OES Agreement, OES developed a website at http://www.ebrisa.com. EB lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations of paragraph no. 9, and therefore denies them.

10. When OES created its ebrisa web site and entered into the EB/OES Agreement, EB had an agreement in place with Editorial Barsa Planeta, Inc., a company with offices in Mexico, D.F., Mexico ("Barsa Planeta"), pursuant to which EB licensed from Barsa Planeta certain Spanish language content generally known as the Enciclopedia Hispanica for EB's exclusive use on EB's online service aimed at institutions such as colleges and universities located in the United States or Canada. EB marketed this service under the BRITANNICA name.

**ANSWER**: EB denies the allegations in paragraph no. 10.

11. By virtue of its agreement with Barsa Planeta, the express exclusivity and non-competition obligations to which EB is subject pursuant to Section 2.1 of the EB/OES Agreement were limited in scope to world-wide with respect to consumers, but to world-wide minus the United States and Canada with respect to institutions.

**ANSWER**: EB denies the allegations in paragraph no. 11 and respectfully refers the Court to the full EB/OES Agreement for a recitation of its terms and conditions.

12. Section 2.1(ii) of the EB/OES Agreement obligated EB to "engage in good faith negotiations with OES to expand the exclusive territory described in Section 2.1(ii) to" include the United States and Canada if EB ceased to distribute the Barsa Planeta's Enciclopedia Hispanica during the Term of the EB/OES Agreement.

**ANSWER**:   EB denies the allegations in paragraph no. 12 and respectfully refers the Court to the full EB/OES Agreement for a recitation of its terms and conditions.

13. EB ceased to distribute Barsa Planeta's Enciclopedia Hispanica content during the Term of the EB/OES Agreement.

**ANSWER**:   EB denies the allegations in paragraph no. 13.

14. In breach of Section 2.1(ii) of the EB/OES Agreement, EB failed to disclose to OES its decision to cease distribution of Barsa Planeta's Enciclopedia Hispanica and failed to "engage in good faith negotiations with OES to expand the exclusive territory" under the EB/OES Agreement to include the United States and Canada.

**ANSWER**:   EB denies the allegations in paragraph no. 14.

15. Barsa Planeta's Enciclopedia Hispanica content that EB distributed under its own mark was a 2003 version of the Enciclopedia Hispanica. OES is informed and believes that EB never updated that content.

**ANSWER**:   EB denies the allegations in paragraph no. 15.

16. On the other hand, the encyclopedic content that OES distributed using its own online services was updated more regularly and more recently than the Enciclopedia Hispanica content that EB was using. Thus, EB had no good faith basis to fail to enter into negotiations required by Section 2.1(ii) of the EB/OES Agreement.

**ANSWER**:   EB denies the allegations in paragraph no. 16.

17. EB's breach denied OES the opportunity to cause the exclusivity and non-competition obligations to which EB is subject under Section 2.1 of the EB/OES Agreement to be expanded to include the Unites States and Canada and to require EB to work with OES on a world-wide basis including the United States and Canada.

**ANSWER**: EB denies the allegations in paragraph no. 17.

18. The United States has a large number of Spanish speaking residents. OES is informed and believes that EB receives substantial revenues from its operation of its Spanish language institutional service in the United States.

**ANSWER**: EB admits that the United States includes residents who speak Spanish. EB otherwise denies the remaining allegations in paragraph no. 18.

19. By breaching Section 2.1(ii) of the EB/OES Agreement, EB has effectively denied the transfer of EB's consumers under its Spanish language institutional portal to the institutional portal of OES, thus dramatically reducing OES' ability to generate sales to those Spanish speaking residents.

**ANSWER**: EB denies the allegations in paragraph no. 19.

20. Reference materials, like those EB licensed to OES under the EB/OES Agreement must be updated regularly and kept current.

**ANSWER**: EB denies that all reference materials must be updated regularly and kept current, and therefore EB denies the allegations of paragraph 20.

21. Section 3.1 of the EB/OES Agreement requires that EB provide updates to OES of the content that EB licenses to OES at least once every six months and that EB update at least 5% of the "text of its articles or entries contained in the encyclopedic reference works comprised in the Exclusive Works."

**ANSWER**: EB denies the allegations in paragraph no. 21 and respectfully refers the Court to the full EB/OES Agreement for a recitation of its terms and conditions.

22. In breach of Section 3.1 of the EB/OES Agreement, EB has failed to provide OES with the updates required by Section 3.1.

**ANSWER**:   EB denies the allegations of paragraph no. 22.

23.   Another key feature of the EB/OES Agreement is EB's agreement to provide marketing, promotion, architectural and development services as required by Section 3.7 of the Agreement.

**ANSWER**:   EB denies the allegations in paragraph no. 23 and respectfully refers the Court to the full EB/OES Agreement for a recitation of its terms and conditions.

24.   In breach of Section 3.7 of the EB/OES Agreement, EB has failed to provide prompt and expeditious marketing, promotion, architectural and development services.  In fact, since September of 2007, EB has refused to provide OES with any marketing, promotional, architectural and development services.

**ANSWER**:   EB denies the allegations in paragraph no. 24.

25.   These material breaches have deprived OES of EB's marketing, promotional, architectural and development assistance.

**ANSWER**:   EB denies the allegations in paragraph no. 25.

26.   Section 3.9 of the Agreement obligated EB to "promote [OES'] Consumer Service throughout the term [of the OES/EB Agreement] on Britannica.com to the same extent that EB promotes its own non-English Consumer web sites or the non-English Consumer web sites of its Affiliates."

**ANSWER**:   EB denies the allegations in paragraph no. 26 and respectfully refers the court to the full EB/OES Agreement for a recitation of its terms and conditions.

27.   Doing so would give a quick and easy access by a potential customer to OES's Content through Britannica's web portal.

**ANSWER**: EB lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph no. 27, and therefore denies them.

28. In breach of EB's obligations under Section 3.9 of the EB/OES Agreement, EB has failed to provide a link on its web site to OES' web site.

**ANSWER**: EB denies the allegations in paragraph no. 28.

29. This material breach has denied OES access to Spanish speaking customers who visit EB's web site.

**ANSWER**: EB denies the allegations of paragraph no. 29.

30. EB's breaches of the EB/OES Agreement have caused OES to suffer substantial damages in excess of $100,000 arising from those breaches.

**ANSWER**: EB denies the allegations of paragraph no. 30.

31. OES is in full compliance with its obligations under the EB/OES Agreement except only in those cases in which its performance has been excused by EB or by EB's own breaches of the EB/OES Agreement.

**ANSWER:** EB denies the allegations of paragraph no. 31.

32. Pursuant to Section 11.1 of the EB/OES Agreement, EB is liable for OES' reasonable attorneys' fees and costs resulting from EB's breach of the EB/OES Agreement.

**ANSWER**: EB denies the allegations of paragraph no. 32.

## COUNT II

1. OES realleges paragraphs 1 through 9 of Count 1of its Counterclaim as paragraph 1 of Count II of its Counterclaim.

**ANSWER**:   EB realleges its responses to the allegations in paragraph nos. 1 through 9 of Count 1.

2. As EB has pled in its complaint in this case, EB has attempted to terminate the EB/OES Agreement and to exercise its Purchase Option under Section 7 of that Agreement. OES contests the validity of that attempted termination.

**ANSWER**:   EB admits that EB terminated the EB/OES Agreement and has attempted to enforce its Purchase Option thereunder.  EB otherwise denies any remaining allegations in paragraph no. 2 of Count II.

3. Under Sections 6.6 and 7 of the EB/OES Agreement, EB has a right, subject to the occurrence of certain express conditions, to purchase certain of OES' assets for a price to be determined using OES' EBITDA.

**ANSWER**:   EB denies the allegations in paragraph no. 3 and respectfully refers the Court to the full EB/OES Agreement for a recitation of its terms and conditions.

4. Under Section 7.3 of the EB/OES Agreement, such a purchase can be closed, at the earliest, on the sixth anniversary of the Launch Date as defined by the Agreement.

**ANSWER**:   EB denies the allegations in paragraph no. 4 and respectfully refers the Court to the full EB/OES Agreement for a recitation of its terms and conditions.

5. The Launch Date under the EB/OES Agreement was July 1, 2006.  That means that, under EB/OES Agreement, EB's exercise of its Purchase Option cannot close until July 1, 2012.

**ANSWER**:   EB admits the Launch Date under the EB/OES Agreement was July 1, 2006.  EB otherwise denies the remaining allegations in paragraph no. 5.

6.    Section 6.6 allows EB to exercise (but not close) its Purchase Option before the sixth anniversary date of the Launch Date; and that exception applies only in the event that EB terminates the EB/OES Agreement for cause.

**ANSWER**:   EB denies the allegations in paragraph no. 6.

7.    Even if EB were to properly exercise its right to terminate the EB/OES Agreement for cause, and to exercise its Purchase Option under that Agreement at the time of that termination, Section 7.3 of the Agreement would still govern such an exercise of EB's Purchase Option.  Thus, EB, even in such a scenario, cannot close its exercise of its Purchase Option until July 1, 2012 at the earliest.

**ANSWER**:   EB denies the allegations in paragraph no. 7 and respectfully refers the Court to the full EB/OES Agreement for a recitation of its terms and conditions.

8.    Notwithstanding the plain language of Section 7.3 of the EB/OES Agreement, EB now contends that, if it exercises the Purchase Option as a result of its purported termination of the EB/OES Agreement for cause, EB may close its exercise of its Purchase Option now rather than on or after July 1, 2012.  OES disputes EB's erroneous interpretation of the EB/OES Agreement.

**ANSWER**:    EB admits that it contends that having terminated the EB/OES Agreement pursuant to Sections 6.1 and 6.3(b), EB is entitled to exercise the Purchase Option, including closing the associated purchase before July 1, 2012.  EB admits that OES contends that the earliest EB is entitled to close on the Purchase Option is July 1, 2012.  EB otherwise denies the remaining allegations in paragraph no. 8 of Count II.

9. By reason of this dispute, there is a real and justiciable controversy existing between the parties, and OES is entitled to a declaration by this Court, pursuant to 28 U.S.C. § 2201, that any Closing of the Purchase Option under Section 7 of the EB/OES Agreement cannot occur before July 1, 2012 regardless of whether EB seeks to exercise that Purchase Option in connection with its purported termination of the EB/OES Agreement for cause.

**ANSWER**:    EB admits that there is a real and justiciable controversy existing between the parties.  EB otherwise denies the remaining allegations in paragraph no. 9 of Count II.

### AFFIRMATIVE DEFENSES TO OES'S COUNTERCLAIM

1. OES is estopped from claiming that the Salvat Agreement was not properly terminated as it has taken the position that Editorial Salvat S.A. is not a necessary party in this action.

2. OES is not entitled to equitable relief because it comes to the Court with unclean hands by virtue of having made material misrepresentations to EB, having breached the EB/OES Agreement, and/or having violated its duty of good faith and fair dealing with EB.

3. OES has consented to the conduct it now claims as a breach of the EB/OES Agreement, and waived its right to the requested relief.

4.　　EB reserves the right to assert additional affirmative defenses to OES's counterclaims at such time and to such extent as warranted by discovery and the factual developments in this case.

5.　　OES owes certain sums to EB.  To the extent that EB is found liable for any amounts owed to OES, EB is entitled to set off such amounts against those owed to EB by OES.

**WHEREFORE**, EB respectfully prays that the Court: (i) enter judgment in favor of EB on each count of OES's counterclaim; (ii) award EB its attorneys' fees and costs; and (iii) award EB such further relief as the Court deems just and appropriate.

Date:　June 26, 2008　　　　　　　　　　LOEB & LOEB LLP

　　　　　　　　　　　　　　　　By:　　/s/ Douglas N. Masters
　　　　　　　　　　　　　　　　　　　Douglas N. Masters
　　　　　　　　　　　　　　　　　　　Blair R. Zanzig
　　　　　　　　　　　　　　　　　　　321 North Clark Street, Suite 2300
　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60610
　　　　　　　　　　　　　　　　　　　Tel:  (312) 464-3100 / Fax:  (312) 464-3111

　　　　　　　　　　　　　　　　　　　Attorneys for *Encyclopaedia Britannica, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of June, 2008, a copy of the foregoing:

**ENCYCLOPAEDIA BRITANNICA, INC.'S REPLY TO ONLINE EDUCATION SYSTEMS, LLC'S COUNTERCLAIM** were filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

>Eric Osterle, Esq.
>MILLER SHAKMAN AND BEEM LLP
>180 N. LaSalle Street, Suite 3600
>Chicago, Illinois  60601

>/s/ Douglas Masters

CH43877.1