

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ENCYCLOPAEDIA BRITANNICA, INC., ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> MARKUS SLEUWEN GUERRERO and ) <br> ONLINE EDUCATION SYSTEMS, LLC, ) <br> ) <br> **Defendants.** ) | No. 08 C 2752 <br><br> Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Encyclopaedia Britannica, Inc. ("Plaintiff") brings this action against Online Education Systems, LLC ("OES") and OES' President, Markus Sleuwen Guerrero ("Guerrero"), (collectively, "Defendants"), seeking injunctive relief, declaratory relief, and damages stemming from Defendants' alleged unauthorized use of Plaintiff's marks, copyrighted content and proprietary rights following the termination of a license agreement between the parties. (R.1, Compl. ¶ 1.) OES, in response, filed a two-count counterclaim, alleging breach of contract and seeking damages and declaratory relief. (R. 14, Countercl.) Currently before the Court is Plaintiff's motion for partial summary judgment on Count II of OES' counterclaim. (R. 21, Pl.'s Mot. for Partial Summ. J. ("Pl.'s Mot.") at 3.) Plaintiff seeks a declaration that pursuant to the licensing agreement between the parties, it has the right to exercise and close its purchase option immediately upon termination for cause. (*Id.*) For the reasons stated below, Plaintiff's motion is granted.

## RELEVANT FACTS[1]

In 2005, OES sought to establish an internet service utilizing Spanish language reference materials. (R. 25, Pl.'s Facts ¶ 3; R. 37, Def.'s Facts at 2.) On July 7, 2005, OES entered into a licensing agreement (the "Original Salvat Agreement") with a Spanish company, Editorial Salvat, S.L. ("Salvat"). (Pl.'s Facts ¶ 4.) Under the Original Salvat Agreement, Salvat would license reference material to OES, including the *Gran Enciclopedia Salvat*, a Spanish language encyclopedia. (R. 37, Def.'s Facts ¶¶ 20-21.) On October 4, 2005, OES entered into a license and distribution agreement (the "License Agreement") with Plaintiff. (R. 25, Pl.'s Facts ¶ 5.) Under the License Agreement, Plaintiff would license its encyclopedic content to OES for use in its internet services. (R. 37, Def.'s Facts ¶¶ 2-3.)

The inclusion of content from the Original Salvat Agreement was an integral part of the License Agreement with Plaintiff. (*Id.* ¶¶ 3, 25.) Section 6.3(b) of the License Agreement allowed Plaintiff to terminate the agreement "at any time following the termination of the [Original] Salvat Agreement." (R. 22, Decl. of Jorge Auilar Cauz in Supp. of Pl.'s Mot. for Partial Summ. J. ("Cauz's Decl."), Ex. A, License Agreement at 11.) Under Section 6.6, Plaintiff had "the right to exercise the Purchase Option in conjunction with such termination" under Section 6.3. (*Id.* at 12.) This Purchase Option, outlined in Section 7 of the License Agreement, gave Plaintiff the right "to purchase the tangible and intangible assets owned by OES that are

---

[1] The Court takes these facts from the parties' Local 56.1 Statements. (R. 25 Pl.'s Statement of Undisputed Material Facts in Supp. of its Mot. for Partial Summ. J. ("Pl.'s Facts"); R. 37, Def.'s Resp. to Pl.'s Statement of Undisputed Material Facts in Supp. of its Mot. for Partial Summ. J. ("Def.'s Facts").)

used in the operation" of OES' services "at times set forth in Section 6.6 and Section 7.2."[2] (*Id.* at 12-13.) Section 7.1 provides that "[i]n addition to the times set forth in Section 6.6, [Plaintiff] shall have the right to exercise the Purchase Option by giving OES written notice of exercise at least one year prior to any of the following annual anniversaries of the Launch Date . . . : (i) the sixth (6th), (ii) the eighth (8th), or (iii) the tenth (10th)." (*Id.* at 13.) Section 7.3 provided that "[t]he closing of the Asset Purchase Agreement (the 'Closing') shall be held at the Chicago offices of [Plaintiff] at such time and on such date as the Parties mutually agree, but in any event no earlier than the sixth anniversary of the Launch Date, unless OES consents." (*Id.*)

In July 2006, OES launched its online services utilizing Plaintiff's content. (R. 25, Pl.'s Facts ¶ 13.) Salvat, however, refused to supply its *Gran Enciclopedia Salvat* content to OES under the Original Salvat Agreement. (R. 37, Def.'s Facts ¶ 22.) Eventually, the Original Salvat Agreement was terminated.[3] (R. 25, Pl's Facts ¶ 15.) On March 25, 2008, after negotiations between the parties came to a standstill, Plaintiff notified OES by letter that it was terminating the License Agreement pursuant to Section 6.3(b), effective March 31, 2008. (R. 25, Pl.'s Facts ¶ 20.) Plaintiff also notified OES of its intent to exercise its option to purchase OES' assets

---

[2] The parties stipulate that the reference to Section 7.2 is a scrivener's error and should instead refer to Section 7.1. (R. 37, Def.'s Facts ¶ 7; R. 35, Pl's Resp. to Def.'s Facts ¶ 7.)

[3] The parties dispute when this termination occurred. Plaintiff argues that the Original Salvat Agreement was terminated on September 11, 2007, when Salvat gave written notice of termination to OES. (R. 25, Pl.'s Facts ¶ 16.) Defendant OES, however, maintains that the Original Salvat Agreement did not terminate until July 1, 2008, when OES and Salvat entered a new licensing agreement, the "New Salvat Agreement." (R. 37, Def.'s Facts ¶ 27.) The Court, however, need not address this factual question, as the narrow issue raised by Plaintiff's motion is whether it has the right to exercise and/or close the Purchase Option under Section 6.6 of the License Agreement in the event of termination for cause under Section 6.3(b). (R. 21, Pl.'s Mot. at 3.)

3

under the License Agreement.[4] (*Id.* ¶ 21.) OES, however, contends that "[e]ven if [Plaintiff] were to properly exercise its right to terminate the [License] Agreement for cause, and to exercise its Purchase Option under that Agreement at the time of that termination, Section 7.3 of the Agreement would still govern such an exercise of [Plaintiff's] Purchase Option. Thus, [Plaintiff], even in such a scenario, cannot close its exercise of its Purchase Option until July 1, 2012 at the earliest." (*Id.* ¶ 22.)

## PROCEDURAL HISTORY

On May 12, 2008, Plaintiff filed suit against Defendants alleging breach of the License Agreement and infringement of copyright and trademark rights. (R. 1, Compl.) Plaintiff seeks damages, injunctive relief, and declaratory relief for violations of the Lanham Act, 15 U.S.C. § 1051; the Copyright Act, 17 U.S.C. § 101; the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125; and various Illinois state laws. (*Id.*) On June 6, 2008, OES in response filed a two-count counterclaim against Plaintiff. (R. 14, Answer to Compl. and Countercl.) In Count I, OES seeks damages from Plaintiff's alleged breach of the License Agreement. (*Id.* at 27-31.) In Count II, OES seeks a declaration from this Court that Plaintiff cannot close its Purchase Option until July 1, 2012 pursuant to Section 7.3 of the License Agreement. (*Id.* at 32-33.) On July 11, 2008, Plaintiff filed this motion for partial summary judgment on Count II. (R. 21, Pl.'s Mot. at 3.)

---

[4] Plaintiff states that the date it notified OES of exercising its purchase option was "March 25, 2005." (R. 25, Pl.'s Facts ¶ 21.) Although OES agrees to this fact (R. 37, Def.'s Facts ¶ 21), the Court finds that this is a typographical error intended to state "March 25, 2008." Using March 25, 2005 is nonsensical, given that the parties did not enter into the License Agreement until October 2005. March 25, 2008, coincides with the date that Plaintiff notified OES of the termination. (R. 25, Pl.'s Facts ¶ 20.)

4

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when the record shows there is no genuine issue of material fact, viewed in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(c). When the parties' dispute turns entirely on issues of contract interpretation, summary judgment is particularly appropriate. *Automation by Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 753 (7th Cir. 2006). "If a contract is not ambiguous and does not require the court to look to extrinsic evidence, there are no factual disputes to preclude summary judgment." *Keck & Garrett Assoc.'s, Inc. v. Nextel Commc'ns, Inc.*, 517 F.3d 476, 484 (7th Cir. 2008). Summary judgment, however, is not appropriate when there are genuine issues of fact with respect to the interpretation of the contract. *Id.*

## ANALYSIS

OES argues that Section 7.3 of the License Agreement is unambiguous and that Plaintiff is restricted to closing the Purchase Option "in any event not earlier than the sixth anniversary of the Launch Date," which would be July 1, 2012. (R. 36, Def.'s Mem. in Opp'n to Pl.'s Mot. for Partial Summ. J. ("Def.'s Mem.") at 8.) OES argues that allowing Plaintiff to close on the Purchase Option immediately would ignore the plain mandate of Section 7.3. (*Id.* at 12.) In contrast, Plaintiff argues that Section 7.3 should be read in context and thus the provision of Section 7.3 would apply only to the closing of Purchase Options exercised under Section 7.1. (R. 24, Pl.'s Mem. of Law in Supp. of Partial Summ. J. ("Pl.'s Mem.") at 10.) Plaintiff also contends that the License Agreement is unambiguous, and that rights under Section 6.6 are "in addition to" those under Section 7.1. (*Id.* at 7.) Plaintiff argues that Section 6.6 allows it to exercise the Purchase Option "in conjunction with" termination for cause under Section 6.3(b). (*Id.*)

5

The parties agree that pursuant to Section 12.3, Illinois law governs the interpretation of the License Agreement. (R. 24, Pl.'s Mem. at n.2; R. 36, Def.'s Mem at 9.) Under Illinois law, the Court's "primary objective in construing a contract is to give effect to the intent of the parties." *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007). Illinois courts interpret contracts based on their plain meaning and bar the consideration of extrinsic evidence when a contract is unambiguous. *See TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 636 (7th Cir. 2007); *Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 687 (7th Cir. 2004). A contract is ambiguous if it is unclear or susceptible to more than one meaning. *Gallagher*, 874 N.E.2d at 58. However, "a contract is not necessarily unambiguous when, as here, each party insists that the language unambiguously supports its position. Rather, whether a contract is ambiguous is a question of law." *Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 214 (Ill. 2004).

The crux of OES' argument is that Section 7.3 covers the exercise of all Purchase Options because it contains no express exceptions and applies "in any event." (R.36, Def's Mem. at 8-9.) The Court finds this argument unavailing for several reasons. First, OES fails to read this provision in relation to the context of the contract as a whole. Section 7.3 directly follows the provisions that deal exclusively with the exercise of the Purchase Option on certain anniversaries of the Launch Date. (R. 22, Cauz's Decl., Ex. A, License Agreement at 13.) Furthermore, Section 7.1 expressly provides that the right to exercise the Purchase Option on those anniversaries is "in addition to the times set forth in Section 6.6," evincing the parties' intent for the two triggers to be considered separately. (*Id.*) Thus, OES wants to ignore other provisions of the contract to give paramount importance to the "in any event" language of Section 7.3. Illinois

6

law does not countenance such a piecemeal interpretation. *See Gallagher*, 874 N.E.2d at 58 ("[B]ecause words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others.").

In addition, OES' interpretation would render Plaintiff's rights under Section 6.6 meaningless. Although OES agrees that Plaintiff can "exercise" its right under the Purchase Option immediately upon termination for cause under Section 6.3(b), it insists, however, that Plaintiff cannot close on that option until July 1, 2012. (R. 36, Def.'s Mem. at 10-11.) Assuming the Original Salvat Agreement terminated no earlier than July 2008, OES' interpretation would grant Plaintiff the ability to exercise a "right" that would have no meaning or effect until four years later. This Court finds it unreasonable to assume that the parties intended to grant Plaintiff a specific purchase right in one provision and then completely vitiate that right using general language in a later provision. OES's interpretation would "contradict the well-settled rules of contract construction, that all provisions are presumed to have been inserted for a purpose, and that a contract should be interpreted to give meaning and effect to each provision contained therein." *Dolezal v. Plastic and Reconstructive Surgery, S.C.*, 640 N.E.2d 1359, 1366 (Ill. App. Ct. 1994).

Furthermore, OES is misguided in its heavy reliance on the phrase "in any event" to support its contention that Section 7.3 applies in every situation in which Plaintiff's right to purchase OES' assets is triggered. (R. 36, Def's Mem. at 11.) Illinois courts have found that "the word 'any' may be limited when other language cannot be given effect without the limitation." *Bank of Am. Nat. Trust and Sav. Ass'n v. Schulson*, 714 N.E.2d 20, 25 (Ill. App. Ct. 1999); *see also Mayfair Const. Co. v. Waveland Assoc.'s Phase I Ltd. P'ship*, 619 N.E.2d 144,

7

153-54 (Ill. App. Ct. 1993) (rejecting a broad interpretation of the phrase 'any dispute' because it would "nullify the explicit mandate of the rest of the contract.").

Here OES is also brandishing the general language of "in any event" to nullify other provisions in the contract. Section 6.6 provides Plaintiff the right to exercise the Purchase Option "in conjunction with" termination for cause and Section 7.1 recognizes that the right in Section 6.6 is "in addition to" the times set forth in Section 7.1. (R. 22, Cauz's Decl., Ex. A, License Agreement at 12-13.) OES' interpretation of the "in any event" language from Section 7.3 would nullify Plaintiff's right under Section 6.6 because Plaintiff could not close this right except under the conditions set forth in Section 7.1. By ignoring the "in addition to the times set forth in Section 6.6" language of Section 7.1, Section 6.6 would not give Plaintiff any more rights than it already had under Section 7.1.

By contrast, Plaintiff's interpretation gives meaning to every provision in the contract. Reading Section 7.3 to apply only to the Purchase Option under Section 7.1, gives meaning to Section 7.3 by specifying that Plaintiff cannot close on this particular right before it actually vests on July 1, 2012. Furthermore, under Plaintiff's interpretation, the phrase "in addition to" in Section 7.1 differentiates Plaintiff's purchase rights following an early termination for cause from Plaintiff's purchase rights that accrue after the parties have performed their contract for several years. Accordingly, the Court finds that the contract is unambiguous, and that Plaintiff's interpretation is the only reasonable interpretation.

OES asserts that it wanted Section 7.3 to apply to Plaintiff's right to purchase assets even under Section 6.6 in order to prevent Plaintiff from buying up OES' assets cheaply before it had a "chance to recover its start-up costs in developing and marketing those assets." (R. 36, Def.'s

8

Mem. at 12.) However, when a contract is unambiguous, as the Court finds here, a parties' subjective intent in entering the contract cannot be used as extrinsic evidence. *Bland v. Fiatallis N. Am., Inc.*, 401 F.3d 779, 784 (7th Cir. 2005). Even if we considered OES' subjective intent, other provisions of the contract already address this concern. Section 6.6 provides Plaintiff with the right to exercise its Purchase Option in conjunction with termination *only* if OES commits a material breach, goes bankrupt, or if the Original Salvat Agreement is terminated. (R. 22, Cauz's Decl., Ex. A, License Agreement at 12.) The License Agreement therefore already limited Plaintiff's right to exercise the Purchase Option to specific termination events that OES could control. (*Id.*) Thus, the subjective intent argument is unavailing and is overcome by the clear language of the contract.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment (R. 21) is GRANTED. The Court concludes that Plaintiff has the right to exercise and close the Purchase Option under Section 6.6 of the License Agreement immediately upon termination for cause under Section 6.3(b).

The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case. The parties shall appear for a status hearing on **February 26, 2009 at 9:45a.m.**

Date: **February 19, 2009**      ENTERED: _____
                                  Ruben Castillo
                                  United States District Judge

9